MICHAEL H. SHERMAN *v.* PLANNING AND ZONING
BOARD OF APPEALS OF THE TOWN OF
GREENWICH ET AL.
(5590)
(5591)

DALY, NORCOTT and FOTI, Js.

Argued December 10, 1987—decision released March 29, 1988

*A. William Mottolese,* with whom, on the brief, was *Hugh D. Fyfe,* for the appellant (named defendant).

*Norman E. Davis* and *Philip R. McKnight* filed a brief for the appellants (Northeast Greenwich Association et al.).

*James A. Fulton* and *Douglas S. Skalka,* for the appellee (plaintiff).

FOTI, J. The defendants appeal from the judgment of the trial court sustaining the appeal of the plaintiff from the decision of the defendant planning and zoning board of appeals of the town of Greenwich which partially revoked the plaintiff's building permit and denied his application for a special exception.[1] The defendants claim that the court erred (1) in finding that the building on the plaintiff's property was not subject to certain building and zoning regulations of the town, and (2) in its application of the town's zoning regulations to the plaintiff's property. We find error.

---

[1] Although the trial court sustained both of the plaintiff's appeals, the defendants did not appeal the court's decision sustaining the plaintiff's appeal from the denial of his application for a special exception.

The facts relevant to this appeal are as follows. The plaintiff owns a four acre residential lot located within the town of Greenwich. The property is presently improved by a two story, single-family dwelling known as the H. H. Mead House, circa 1760. The Mead House is comprised of 2680 square feet of living space. The property was previously part of a larger tract of land on which existed two buildings, separated by ninety-five feet. At the time the property was subdivided, the owners were granted a variance from the zoning regulation that requires that principal dwellings on adjacent lots be separated by at least one hundred feet, fifty feet from each property line. Mead House was the principal dwelling on the plaintiff's property.

The zoning regulations for the town limit the number of principal dwellings to one for each four-acre lot. The regulations provide, however, that there may be a guest house,[2] which is a type of accessory building,[3] on the lot provided that it does not have "more than 1200 square feet of floor area unless authorized by the Board of Appeals as a special exception." Regulation § 6-95 (a) (2).[4]

In 1983, the plaintiff applied for a building permit to erect a new 5000 square foot principal dwelling on

---

[2] Section 6-1 (a) (27) of the town's zoning regulations defines guest house as follows: "Guest House shall mean an accessory building used solely by the owner or occupant of the premises for the temporary accommodation of his guest or members of his family and for which no rental or other charge is made or received and provided that no kitchen facilities or other housekeeping facilities are included in the accessory building."

[3] Section 6 of the town's zoning regulations defines accessory building as follows: "Building, Accessory or Accessory Use shall mean, in a residential zone, an accessory building or use which is subordinate and customarily incidental to the principal building or use on the same lot."

[4] Section 6-95 (a) (2) of the town's zoning regulations provides: "Private garages, barns, sheds, shelters, silos and other structures customarily accessory to residential estates, farms, or resident uses provided no accessory building shall have more than 1,200 square feet of floor area unless authorized by the Board of Appeals as a special exception."

the same lot with the Mead House; in December of 1984, the town issued a building permit contingent upon converting the existing structure, Mead House, to a guest house requiring the removal of all "housekeeping facilities." The permit did not, however, require that the Mead House meet the 1200 square foot area requirement on the basis of the belief that the Mead House was not subject to the area limitation because it predated the regulation.

A neighbor filed an appeal with the planning and zoning board of appeals on the ground that the Mead House contained living space in excess of the 1200 square foot area limitation, thus, requiring a special exception before the permit could be issued. The plaintiff subsequently filed an application for a special exception which, if granted, would have exempted the property from the area limitation. The board held a consolidated hearing for both the appeal and the application for a special exception. The board sustained the neighbor's appeal finding § 6-95 of the town's zoning regulations applied to both new and existing buildings. The board ordered the plaintiff's building permit rescinded unless the Mead House was removed or reduced in size to not more than 1200 square feet of floor area; the board also denied the plaintiff's application for a special exception.

The plaintiff appealed both decisions of the board pursuant to General Statutes § 8-8. The appeals were consolidated before being heard by the Superior Court.

The court concluded that the board had erred in rescinding the plaintiff's building permit. Applying the reasoning of *Petruzzi* v. *Zoning Board of Appeals,* 176 Conn. 479, 408 A.2d 243 (1979), the court found that, since the Mead House was a preexisting legal nonconformity due to a variance for the setback regulation, the board was prohibited from applying the area limitation for accessory buildings to the structure. The

court also concluded that the Mead House was a pre-existing legal nonconformity insulated from subsequently enacted regulations because it was built prior to the enactment of the town's zoning regulations.

We consider the latter conclusion first. The court concluded, in its memorandum of decision, that the Mead House was the principal dwelling on the plaintiff's property. The house, therefore, was not an accessory building as defined by the town's zoning regulations. Thus, the house could not, as the court held, be exempt from the square foot regulation for accessory buildings on the theory it was a preexisting legal nonconformity since it only held that status for a sideyard setback regulation. The use of the Mead House as an accessory building, therefore, would have required a change in the structure's use.

Next, we consider the court's application of *Petruzzi* v. *Zoning Board of Appeals,* supra. In *Petruzzi,* the plaintiff had applied for a permit to convert a church to residential use; the town initially denied the permit on the theory that the church did not meet the setback regulations. Our Supreme Court held that since the church's violation of the setback regulation was a pre-existing legal nonconformity, that nonconformity could not be used to prohibit the otherwise legal use of the building for residential purposes.

The defendants claim that the court erred in its application of the reasoning in *Petruzzi* to the facts in this case. They note that in *Petruzzi* the court reached its conclusion, in part, because the zoning regulations for the town of Oxford did not prohibit "a change from one permitted use to another permitted use, with respect to a building or lot having a condition of legal nonconformity"; id., 481; and that in this case the relevant zoning regulation; (Rev. to 1981) § 6-141 (a);[5]

---

[5] Greenwich's zoning regulations § 6-141 (a) (Rev. to 1981) provides in relevant part: "In addition to a building becoming legally non-conforming

expressly provides that a "change" in the use of a legal nonconformity is permitted "only if after application for a Special Permit, the Commission finds that the change" meets certain standards.

The plaintiff concedes that the trial court erroneously applied the 1978 revision of § 6-141 (a)[6] to the facts, rather than applying the amended regulation. The plaintiff also concedes that under the 1981 revision of

pursuant to Sec. 8-13a of Connecticut General Statutes, any building, lot or use, lawfully existing on February 1, 1926 or on the effective date of any amendment thereafter to these Regulations, may be continued and its non-conforming status shall be deemed lawful, provided that with respect to use the non-conforming use must be actual and not discontinued for any period in excess of one year and maintained within the same structure as existed on February 1, 1926 or on the date that said use conformed to these Regulations.

"(1) Change: A non-conforming building, lot or use, or the building in which a non-conforming use occurs may be changed to another non-conforming use only if after application for Special Permit, the Commission finds that said change meets the standards of Section 6-15 and 6-17 and also finds said changed use is not more detrimental to the neighborhood than the existing use."

[6] Greenwich's zoning regulations, § 6-141 (a) (Rev. to 1978) provides in relevant part: "Non-conforming uses; restrictions.

"(a) Any building or use except as limited by law, lawfully existing on February 1, 1926, or on the effective date of any amendments to this Article since February 1, 1926 even though not conforming to the provisions of this Chapter are permitted and may be continued, changed or altered subject to the following conditions:

"(1) Change to another non-conforming use. A non-conforming use of land or structure shall not be changed to any other non-conforming use which is more detrimental to the neighborhood and no structure shall be added to unless such addition and the use made thereof shall conform with the provisions of this Article, except that dwellings or accessory buildings in residential zones which have legally non-conforming yards may be added to, provided the addition does not further encroach into the required yard[s] and provided that any addition extending horizontally beyond the limits of the building will have a width not more than half of the total width of the non-conforming portion of the building being added to. Only one (1) nonconforming addition may be made under the latter provision and construction permitted by variance of yard requirements may not be counted in the width calculations described above."

§ 6-141 (a) the Mead House is not insulated from the town's building regulations. The plaintiff now relies entirely on the language of General Statutes § 8-2[7] for its claim that the Mead House is excepted from the area limitation for accessory buildings. We do not agree.

The relevant language of § 8-2 provides: "Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." The language of the statute is clear; for example, if a restaurant legally existed in an area which was subsequently zoned residential and a town enacted new regulations prohibiting restaurants, the preexisting restaurant could not be affected by the new regulations. Similarly, if a town changed the setback regulation for residential

---

[7] General Statutes § 8-2 provides: "REGULATIONS. The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, and the height, size and location of advertising signs and billboards. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for trans-

homes, preexisting homes could not be affected by the new setback regulations. If, however, a house, which was a nonconformity because it predated the setback regulation, was changed to a restaurant it would not be insulated from the regulations for restaurants, except for the setback nonconformity. Here, the Mead House was being used as a principal dwelling and could not be changed to an accessory building without conforming to the town's regulation for such buildings.

The interpretation of § 8-2 that the plaintiff proposes would allow the plaintiff to change the Mead House to any legal use whether it conformed to the regulations for that legal use or not. The plaintiff's interpretation, therefore, would wholly vitiate the portions of § 8-2 that grant towns authority to regulate zoning. Statutes must

portation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. Such regulations shall also encourage the development of housing opportunities for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity. Zoning regulations may be made with reasonable consideration for the protection of historic factors and shall be made with reasonable consideration for the protection of existing and potential public surface and ground drinking water supplies. On and after July 1, 1985, the regulations shall provide that proper provision be made for soil erosion and sediment control pursuant to section 22a-329. Such regulations may also encourage energy-efficient patterns of development, the use of solar and other renewable forms of energy, and energy conservation. The regulations may also provide for incentives for developers who use passive solar energy techniques, as defined in subsection (b) of section 8-25, in planning a residential subdivision development. The incentives may include, but not be limited to, cluster development, higher density development and performance standards for roads, sidewalks and underground facilities in the subdivision. Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Any city, town or borough which adopts the provisions of this chapter may, by vote of its legislative body, exempt municipal property from the regulations prescribed by the zoning commission of such city, town or borough; but unless it is so voted municipal property shall be subject to such regulations."

be interpreted to give meaning to their plain language and to provide a unified body of law. *Stop & Shop Cos., v. East Haven,* 13 Conn. App. 393, 536 A.2d 991 (1988). The plain meaning of § 8-2 only affects nonconforming uses which are, in fact, in existence at the time a new regulation is adopted.

Even in *Petruzzi,* the court did not insulate the church from the town's regulations for residential property. "In determining whether to issue the building permit, the building official was required to decide whether the proposed use was in conformity with the applicable regulations." *Petruzzi* v. *Zoning Board of Appeals,* supra, 482. The court, therefore, limited its holding to the conclusion that the setback regulation could not affect the use of the church for residential purposes. Otherwise, the church was required to meet the regulations for residential use.

Thus, the Mead House could only be changed to an accessory building if it otherwise conformed to the regulations for such buildings, unless the plaintiff obtained a special exception for the change.[8]

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[8] In its memorandum of decision, the court concluded that the plaintiff's appeal from the board's decision denying his application for a special exception was moot as a consequence of its holding that the Mead House was exempt from the square foot limitation for accessory buildings. The court then rendered judgment sustaining the plaintiff's appeal from that decision of the board. These inconsistent rulings created sufficient confusion that the defendants did not appeal this decision. The plaintiff now claims that any decision rendered by this court is ineffective because the actions of the trial court granted the plaintiff a special exception. We disagree.

The inconsistent rulings of the court, at most, granted the plaintiff a rehearing with the board on his application for a special exception. Because, however, this decision was based on the court's erroneous interpretation of *Petruzzi* v. *Zoning Board of Appeals,* 176 Conn. 479, 408 A.2d 243 (1979), we cannot conclude that the court granted the plaintiff any relief.