U.S. VISION, INC., ET AL. *v.* BOARD OF EXAMINERS
FOR OPTICIANS
(5563)

BIELUCH, STOUGHTON and FOTI, Js.

Argued January 19—decision released July 19, 1988

*Stewart I. Edelstein,* for the appellants (plaintiffs).

*Maite Barainca,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellee (defendant).

FOTI, J. The plaintiff[1] appeals from the judgment of the trial court dismissing its appeal from a decision ren-

---

[1] U.S. Vision, Inc., doing business as Leased Optical and doing business as Wall and Oachs, was the named defendant in the statement of charges. Also cited as defendants were five licensed opticians who managed the separate stores. The board found that the department failed to present any evidence which would support a judgment against the individual licensed opticians for the alleged violations of General Statutes § 20-153. The charges against the individual opticians were not appealed to the Superior Court and are, therefore, not on appeal to this court. The use of the term plaintiff in this opinion refers to the named plaintiff, U.S. Vision, Inc.

dered by the board of examiners for opticians (board). The plaintiff claims that the trial court erred (1) in finding that General Statutes § 19a-17 (a) (6)[2] permits the imposition of a cumulative civil penalty in excess of $1000, (2) in finding that a vacancy on the three member board did not invalidate a decision by the remaining two members, and (3) in sustaining the board's decision which found U.S. Vision, Inc., in violation of General Statutes § 20-153.[3] We find no error.

[2] General Statutes § 19a-17 (a) (6) (Formerly Sec. 19-4s) provides in relevant part: "Each board or commission established under chapters 369 to 375, inclusive, 378 to 381, inclusive, and 383 to 388, inclusive, and the department of health services with respect to professions under its jurisdiction which have no board or commission may take any of the following actions, singly or in combination, based on conduct which occurred prior or subsequent to the issuance of a permit or a license upon finding the existence of good cause: . . . Assess a civil penalty of up to one thousand dollars . . . ."

[3] General Statutes (Rev. to 1983) § 20-153 provides: "The department may grant annually, upon the filing of an application as required by it, an optical permit to any optical establishment, office, department or store conducted under the personal and direct supervision of a licensed optician, for permission to sell, dispense or supply to the ultimate wearer optical aids to vision, instruments, appliances, eyeglasses, spectacles and other kindred products. Holders of such an optical permit shall be permitted to use the term 'optician' or any of its synonyms. No optical permit shall be issued to any person, firm or corporation owning, managing or conducting any optical establishment, department, store, office or place of business and employing any person lawfully licensed to prescribe optical glasses from given prescription formulas, unless such person is also licensed as a licensed optician, except as provided in section 20-162. The quality of optical lenses, spectacles, eyeglasses, optical appliances or instruments and other aids to vision and kindred products of optical glasses shall meet whichever of the following standards prescribed by the American National Standards Institute may be applicable: American National Standards Institute Z.80.1-1972 'requirements for first quality prescription ophthalmic lenses' which standard shall apply to first-quality prescription ophthalmic lenses in edged or assembled form, white, colorless or tinted, single-vision or multifocal, plastic, laminated, impact-resistance-treated or untreated glass lenses, but shall not apply to blended multifocals, and American National Standards Institute Z.87.1-1968 'practice for occupational and educational eye and face protection' which standard shall apply to all occupational and educational operations and processes, excluding those relating to x-rays, gamma rays, high-energy particulate radiations, lasers, or masers; the commissioner of

The following facts are relevant to this appeal. The board of examiners for opticians was presented with an eleven count statement of charges by the department of health services. The statement of charges alleged that the plaintiff was operating seven "optical shops" without licensed opticians on the premises. In particular, the statement of charges alleged that on eight separate occasions the plaintiff operated an optical shop without the personal and direct supervision of a licensed optician. Seven different establishments were cited, each of these shops operated under separate permits. The charges also alleged that on two occasions an unlicensed employee performed regulated activities, including the measuring of the pupillary distance of eyes, without a licensed optician on the premises.

The department of health moved for a summary suspension of the plaintiff's permits to operate optical shops. The board denied the motion for summary suspension, finding insufficient evidence of a clear and immediate danger to warrant the suspension of the permits prior to a full hearing.

A hearing on the statement of charges was held on April 29, 1985. On August 12, 1985, the board issued its decision finding that U.S. Vision, Inc., had violated General Statutes §§ 20-153 and 20-154[4] on ten sepa-

health services, with advice and assistance from the board shall make reasonable regulations so that the public may not be misled in the puchase or acquisition of the same."

[4] General Statutes (Rev. to 1983) § 20-154 provides: "The commissioner of health services, with advice and assistance from said board, may make regulations concerning the licensing of any optician, the granting of any permit to any optical department or the certification of any licensed optician, and the suspension or revocation of any such license or permit, or with reference to the conduct of any such licensee or permittee and the manner in which any such licensed optical department is conducted. Any license to practice as a licensed optician or to conduct any optical department may be suspended or revoked or reissued by said board. The certifi-

rate counts, including two counts for allowing an apprentice optician to provide optical services without the supervision of a licensed optician. The board imposed a $500 fine for each violation and ordered U.S. Vision, Inc., to discontinue the practice of operating optical shops without a licensed optician on the premises. The board, however, found insufficient evidence to conclude that individual licensed opticians were guilty of any violation. Further, it dismissed one count alleging a course of conduct with the intent to violate §§ 20-153 and 20-154.

The plaintiff conceded at the administrative hearing that the apprentice's conduct was in violation of § 20-153 and that, although she had been told she should not fit, measure, adjust or put glasses on a client's face,

cate of registration, permit or license of any optician or of any optical permittee may be revoked, suspended or annulled or any action taken under section 19a-17 upon decision after notice and hearing by the board for any of the following reasons: Fraudulent, dishonest, illegal or incompetent or negligent conduct of his business as such licensee or permittee; aiding or abetting any unlicensed person whose license has been suspended or revoked, or any optical permittee whose permit has been suspended or revoked in the conduct of an optician's establishment, office or store; violation of any provision of this chapter or any regulation adopted hereunder; presentation to the department of any diploma, license or certificate, irregularly or fraudulently obtained or from any unrecognized or irregular college or state commission, or obtained by the practice of any fraud or deception; physical or mental illness, emotional disorder or loss of motor skill, including but not limited to, deterioration through the aging process; abuse or excessive use of drugs, including alcohol, narcotics or chemicals. The commissioner of health services may order a license holder to submit to a reasonable physical or mental examination if his physical or mental capacity to practice safely is the subject of an investigation. Said commissioner may petition the superior court for the judicial district of Hartford-New Britain to enforce such order or any action taken pursuant to section 19a-17. The violation of any of the provisions of this chapter by any unlicensed employee in the employ of any of the licensees or permittees, with the knowledge of his employer, shall be deemed to be a violation thereof by his employer; and continued violation thereof by such an unlicensed employee shall be deemed to be, prima facie, with the knowledge of such employer."

or dispense glasses when a licensed optician was not on the premises, she did in fact perform optical services without the supervision of a licensed optician. The board found that the apprentice made visual measurements, indicated what style and size frame would be appropriate for a customer's face and measured the pupillary distance of eyes. The board also found that on a separate occasion the apprentice fitted a customer with eyeglasses and made adjustments to the frames. The plaintiff also concedes the board's finding that on eight separate occasions a store was open for business without a licensed optician present.

The plaintiff first claims that the board erred in assessing multiple fines against it. In particular, the plaintiff contends that General Statutes § 19a-17 (a) (6) limits the board's authority to assess a cumulative civil penalty to $1000. We disagree. Section 19a-17 (a) (6) provides that the board has the authority to "assess a civil penalty of up to one thousand dollars" for any violation of chapter 381. We note at the outset that the legislature has chosen to call this sanction a "civil penalty." In applying the statutory language of § 19a-17 (a) (6) to the facts presented by this case, we must give the plain language of the statute its logical meaning. *Sherman v. Planning & Zoning Board of Appeals*, 13 Conn. App. 699, 706–707, 539 A.2d 588 (1988); *Stop & Shop Cos. v. East Haven*, 13 Conn. App. 393, 399, 536 A.2d 991 (1988). It is undisputed that the health department could have brought ten separate actions for the ten separate violations of General Statutes §§ 20-153 and 20-154[5] and that the board has the authority to impose

[5] Eight of the violations charged the operation of shops without a licensed optician present. Six of these violations involved six different establishments operated under separate permits. Four violations involved a single separate establishment; these violations included the operation of that establishment without a licensed optician on the premises on two occasions and two violations for the dispensing of regulated services by an unlicensed employee while no licensed optician was present to supervise the establishment.

ten separate civil penalties of up to $1000 each, constituting a cumulative civil penalty far in excess of the penalty imposed in this case. The defendant contends, however, that because the health department brought the ten separate counts in a single statement of charges, the $1000 limitation applies, not to each separate violation, but to the entire statement of charges. The interpretation of § 19a-17 (a) (6) proffered by the plaintiff is inconsistent with the plain language of the statute.

If we adopted the plaintiff's construction of the statute, the health department would remain free to bring separate actions to achieve a result the plaintiff contends it has no authority to achieve in a single action. Here, the health department could have brought ten separate actions resulting in an unnecessary burden on the plaintiff and the judicial system. The principles of judicial economy; *Sauter* v. *Sauter,* 4 Conn. App. 581, 584–85, 495 A.2d 1116 (1985); and statutory construction; *Stop & Shop Cos.* v. *East Haven,* supra; lead to the conclusion that the legislature intended a single result whether the health department brings one action or ten separate actions for precisely the same conduct. We conclude, therefore, that § 19a-17 (a) (6) is a limitation on the civil penalty which the board may impose for each violation of the chapter, but does not affect the cumulative civil penalty the board may impose for separate violations under the chapter.

Since the penalty for each separate violation was less than the statutory maximum penalty, the court was not in error in finding that the board had authority to assess a penalty of $500 for each violation of the statute, totaling $5000.

The plaintiff next claims that because there was one vacancy on the three member board, the remaining two members were not a legally constituted body and, since

no board could legally have existed at the time of the hearing or at the time of the decision, the order is void. The plaintiff argues that the use of "shall" in General Statutes § 20-139a[6] mandates that a three member board be convened in order that the board be vested with the powers set forth in General Statutes §§ 20-138 et seq. We do not agree.

General Statutes § 20-139a provides that the board be comprised of three members, two opticians and one member of the general public, all of whom are appointed by the Governor. A vacancy caused by the resignation of one of the optician members had not been filled at the time of the proceedings. It is undisputed that the

[6] General Statutes § 20-139a provides: "(a) There shall be within the department of health services a Connecticut board of examiners for opticians. Said board shall consist of three members appointed by the governor, subject to the provisions of section 4-9a, as follows: Two practicing licensed opticians in good professional standing who reside in this state and one public member. The governor shall appoint a chairman from among such members.

"(b) Said board shall meet at least once during each calendar quarter and at such other times as the chairman deems necessary. Special meetings shall be held on the request of a majority of the board after notice in accordance with the provisions of section 1-21. Members shall not be compensated for their services but shall be reimbursed for necessary expenses incurred in the performance of their duties. Any member who fails to attend three consecutive meetings or who fails to attend fifty per cent of all meetings held during any calendar year shall be deemed to have resigned from office. Minutes of all meetings shall be recorded by the board. No members shall participate in the affairs of the board during the pendency of the disciplinary proceedings by the board against such member. No professional member shall be an elected or appointed officer of a professional society of opticians or have been such an officer during the year immediately preceding his appointment.

"(c) The commissioner of health services, with advice and assistance from the board, may make and enforce such regulations as the commissioner deems necessary to maintain proper professional and ethical standards for opticians. The board may revoke or suspend licenses for cause.

"(d) The board of examiners for opticians shall (1) hear and decide matters concerning suspension or revocation of licensure, (2) adjudicate complaints filed against practitioners licensed under this chapter and (3) impose sanctions where appropriate."

remaining two members participated in and concurred in the result which is the subject of this appeal.

The plaintiff's position that a vacancy on an administrative board created by a resignation deprives the board of its statutory authority would lead to an unreasonable result not intended by the legislature. "The rule is that all bodies charged with the performances of public duties continue to function though a vacancy exists." *Brein* v. *Eclectic Examining Board,* 103 Conn. 65, 87, 130 A. 289 (1925). A board may act as long as there exists a quorum comprising a majority of all the members who have been appointed and have not been disqualified. *Liquified Petroleum Gas Commission* v. *E. R. Kiper Gas Corporation,* 229 La. 640, 647, 86 So. 2d 518 (1956). There is no language in General Statutes § 20-139a that requires the board to act unanimously or that requires any specific number of members to act. Two members of the board constitute a majority and have all of the authority that is granted to a three member board. General Statutes § 20-139a (d) grants the board the power to "hear and decide matters concerning suspension or revocation of license" and to "impose sanctions where appropriate." The general intent of the legislature that only a majority is needed to render a decision is supported by General Statutes §§ 1-1 (h)[7] and 4-179[8] which similarly state that

---

[7] General Statutes § 1-1 provides in relevant part: "(a) In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly. . . .

"(h) Words purporting to give a joint authority to several persons shall be construed as giving authority to a majority of them."

[8] General Statutes § 4-179 provides: "When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision. The proposal

a majority of a board is sufficient for its legal functioning. We, therefore, conclude that the two member board was vested with full authority to impose sanctions under § 20-153.

The plaintiff's final claim is that the court erred in concluding that the board correctly interpreted General Statutes § 20-153.[9] The relevant portion of the statute provides: "The department may grant annually . . . an optical permit to any optical establishment . . . conducted under the personal and direct supervision of a licensed optician, for permission to sell, dispense or supply to the ultimate wearer optical aids to vision, instruments, appliances, eyeglasses, spectacles and other kindred products."[10] The board concluded that the language of the statute requires that an optician be on the premises "at all times." The board also concluded that a practical reason for the requirement is that there is a high probability that when an "optical shop is open, a customer will have services performed which should be done under the direct supervision of the licensed optician even when no licensed optician is in fact on the premises."

Statutes must be interpreted to give meaning to their plain language and to provide a unified body of law. *Stop & Shop Cos.* v. *East Haven,* supra, 398. An administrative agency's interpretation of a statute is ordinarily an aid to its construction and should be accorded great weight. *Local 1186* v. *Board of Education,* 182 Conn. 93, 105, 438 A.2d 12 (1980). This is

---

for decision shall contain a statement of the reasons therefor and of each issue of fact or law necessary to the proposed decision, prepared by the person who conducted the hearing or one who has read the record. The parties by written stipulation may waive compliance with this section."

[9] The defendant has briefed this claim as three separate issues; we will consider it as one claim of error.

[10] Section 20-141-7 of the regulations of Connecticut state agencies, defines "kindred products" as "complete eyeglasses principally worn as an aid to vision and sold as optical stock-in-trade article of merchandise . . . ."

ordinarily true where the statutory language is ambiguous and the "governmental agency's time-tested interpretation is 'reasonable . . . .' " *Anderson* v. *Ludgin,* 175 Conn. 545, 555–56, 400 A.2d 712 (1978). "Like courts, 'administrative agencies must necessarily interpret statutes which are made for their guidance. To rule otherwise would be to ignore the subtle and intricate interaction of law and fact. It is inherent in our judicial system of dispute resolution that the interpretation of statutes, like the development of the common law, grows out of the filtering of a set of facts through the law, as seen by the administrator or judge.' *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 356–57, 377 A.2d 1099 (1977)." *Eagle Hill Corporation* v. *Commission on Hospitals & Health Care,* 2 Conn. App. 68, 76, 477 A.2d 660 (1984).

The plaintiff contends, in this appeal from the trial court's judgment sustaining the board's interpretation of § 20-153, that the requirement that optical establishments be conducted under the direct supervision of a licensed optician is limited by the type of business that is actually conducted in the store. The plaintiff argues that the language in § 20-153, "sell, dispense or supply [eyeglasses] to the ultimate wearer optical aids," determines the conduct that must be supervised by a licensed optician and "such supervision is not required in the absence of such activity." We cannot agree with this interpretation.

The plaintiff's analysis fails to include critical language immediately preceding the language it relies upon for its proffered construction of the statute. The relevant portion of the statute provides "for permission to sell, dispense or supply to the ultimate wearer optical aids to vision, instruments, appliances, eyeglasses, spectacles and other kindred products." Contrary to the construction proposed by the plaintiff, the described conduct defines "optical establishment, office, department or store."

Thus, giving all the words in the statute their logical and plain meaning; *Sherman* v. *Planning & Zoning Board of Appeals,* supra, 707; and reading § 20-153 as a unified whole, we conclude that an optical establishment is any enterprise which has permission to carry on any of the services described in the statute and that the direct supervision of a licensed optician is required for the operation of such enterprises, whether the establishment is actually carrying on those services or not.

This conclusion is consistent with the public purpose expressed by the legislature when it enacted these statutes. "The provisions of this chapter [381] are enacted in the exercise of police powers of the state, and the purposes thereof generally are to protect public health, welfare and safety. . . ." General Statutes § 20-139. In enacting regulations that require a qualified person to be present on the business premises, the legislature seeks to assure the public that the qualified person shall be in a position where he can exercise direct and immediate control over the conduct of the regulated business. *Loglisci* v. *Liquor Control Commission,* 123 Conn. 31, 38, 192 A. 260 (1937). We note that an optical establishment is required to display its permit in a conspicuous place at all times. General Statutes § 20-157. The message that this permit communicates to the public is that a qualified person is on the premises. Allowing these establishments to choose, arbitrarily, when they will have a licensed optician on the premises would unjustifiably place the burden on the customer to determine whether a licensed optician is, in fact, on the premises. The plaintiff's construction of § 20-153 would also place an unwarranted burden on unlicensed employees when customers, seeking regulated services, enter such establishments at times when no licensed optician is on the premises.

Finally, we note that in interpreting § 20-153, great deference must be accorded the construction given to

the statute by the board, which is charged with enforcement of that statute and the regulations. *Pergament Norwalk Corporation* v. *Kaimowitz,* 4 Conn. App. 633, 637, 496 A.2d 217 (1985). The board concluded that the express language of § 20-153 requires that "once a store is open for business and given a permit [the store] has to be under the direct and personal supervision of a licensed optician at all times."

Although it may be technically feasible to operate an optical establishment without actually conducting regulated services, the facts of this case illustrate the practical impossibility of walking such a fine line. Here, on two occasions, an unlicensed employee dispensed regulated services to health department investigators while there was no licensed optician on the premises. In fact, the plaintiff concedes that it was its practice to operate its optical stores one day of each week without a licensed optician on the premises.

The operator of a regulated business is not entitled to decide for himself when he will engage in such activity. See *Griswold* v. *Kelly,* 140 Conn. 582, 584–85, 102 A.2d 349 (1954). If we were to construe § 20-153 as the plaintiff proposes, there would be no obstacle to operating optical establishments five days each week without a licensed optician on the premises. We cannot conclude that the legislature intended such a bizarre and irrational result when it enacted § 20-153. *Tucker* v. *Board of Education,* 4 Conn. App. 87, 92, 492 A.2d 839 (1985). Nor can we conclude that the legislature intended that the health department would be required to police such an unwieldy regime.

Finally, we conclude, after a review of the record and briefs, that the court did not abuse its discretion in dismissing this appeal.

There is no error.

In this opinion STOUGHTON, J. concurred.

BIELUCH, J., concurring and dissenting. I agree with the rulings of the majority, except as to their conclusion that "[s]ince the penalty for each separate *violation* was less than the statutory maximum penalty, the court was not in error in finding that the board had authority to assess a penalty of $500 for each *violation* of the statute, totaling $5000." (Emphasis added.) The majority opinion cites no authority in support of this ruling. .

Pursuant to its authority under General Statutes (Rev. to 1985) § 19a-17, the board made the following order: "(1) That U.S. Vision be *fined* five hundred dollars for each of ten separate counts of violations of Connecticut General Statutes § 20-153 and § 20-154. A check for $5000 should be made payable to the State of Connecticut and be submitted within 30 days." (Emphasis added.) The administrative order of the board, despite limitations under § 19a-17, by its very terms imposed separate criminal "fines" upon U.S. Vision without the attendant due process safeguards and constitutional protections. The board did not impose a civil "penalty for each separate violation," as the majority states. This action of the board was ultra vires and imposed criminal sanctions, rather than an authorized civil penalty, upon the named plaintiff.

In its memorandum of decision, the board relied specifically upon the following statutory provisions for the imposition of its penalty upon U.S. Vision: "17. Connecticut General Statutes § 20-154 provides in pertinent part that: The certificate of registration, permit or license of any optician or of any optical permittee may be revoked, suspended or annulled or any action taken under section 19a-17 upon decision after notice and hearing by the board for any of the following reasons: . . . violation of any provision of this chapter or any regulation adopted hereunder . . . . 18. Connecticut General Statutes § 20-153 provides in perti-

nent part that: The department may grant annually, upon the filing of an application as required by it, an optical permit to any optical establishment, office, department or store conducted under *the personal and direct supervision* of a licensed optician, for permission to sell, dispense or supply to the ultimate wearer optical aids to vision, instruments, appliances, eyeglasses, spectacles and other kindred products." (Emphasis in original.)

General Statutes § 19a-17 provides that the board "may take any of the following [disciplinary] actions, singly or in combination . . . upon finding the existence of good cause: (1) Revoke a practitioner's license or permit; (2) Suspend a practitioner's license or permit; (3) Censure a practitioner or permittee; (4) Issue a letter of reprimand to a practitioner or permittee; (5) Place a practitioner or permittee on probationary status . . . [or] (6) Assess a civil penalty of up to one thousand dollars . . . ." Relevant to this discussion is the criminal penalty for a violation of §§ 20-153 and 20-154 provided in § 20-161 as follows: "Any person who violates any provison of this chapter, for the violation of which no other penalty has been provided, shall be fined not more than five hundred dollars or imprisoned not more than five years or both. *For purposes of this section each instance of patient contact or consultation which is in violation of any provision of this section shall constitute a separate offense. . . ."* (Emphasis added.)

The issue under consideration is controlled by the specific and contrasting definitions adopted by the legislature as to sanctions for the optical permit violations under consideration on this appeal. The legislature's penalty distinction would be meaningless if the civil penalty provided § 19a-17 (a) (6) were to be a criminal fine as allowed by § 20-161 for separate offenses and as imposed by the board in this case. The legislative

intent in its distinction between the civil penalty of § 19a-17 (a) (6), and the criminal penalty of a fine or imprisonment, or both, and for multiple offenses, under § 20-161, is evident in the clear language of these statutory provisions. A civil penalty is remedial in nature, while a criminal penalty is penal. For this reason, the imposition of a criminal penalty mandates the safeguards of due process and other constitutional protections. An administrative agency, such as the board here, may impose civil penalties only. Criminal penalties are the exclusive province of a court of law.

"The term 'penalty' in its broadest sense includes all punishment of whatever kind. 13 Amer. & Eng. Ency. of Law, p. 53. A fine is always a penalty, but a penalty may not always be a fine. *United States* v. *Nash,* 111 Fed. Rep. 525. A fine is a 'pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor.' 2 Bouvier Law Dictionary (3d Rev.) 1225; *Southern Express Co.* v. *Commonwealth ex rel. Walker,* 92 Va. 59, 63, 22 S.E. 809; *Lancaster* v. *Richardson,* 4 Lans. (N.Y.) 136, 140." *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 368, 114 A. 104 (1921); *Second National Bank of New Haven* v. *Loftus,* 121 Conn. 454, 459, 185 A. 423 (1936).

The plaintiff's conduct considered by the board under the provision of § 19a-17 (a) (6) is not a crime punishable in a criminal proceeding in a court of law. The constitutional protections applicable to criminal prosecutions do not attach to the imposition of a civil penalty under § 19a-17 (a) (6). The statute's provisions for disciplinary action by the board allow for civil administrative sanctions of a remedial character in support of the enforcement of § 20-154, which provides that "[t]he certificate of registration, permit or license of any optician or of any optical permittee may be revoked, suspended or annulled or any action taken under section 19a-17 upon decision after notice and

hearing by the board for any of the following reasons: . . . violation of any provision of this chapter or any regulation adopted hereunder. . . ." Supplemental to such civil sanctions, criminal prosecution is available under the provisions of § 20-161 for a violation of any "provision of this chapter, for the violation of which no other penalty has been provided." Our concern in this appeal relates solely to the legality of the board's administrative civil penalty under § 19a-17 (a) (6).

The board acted illegally when it ordered "[t]hat U.S. Vision be *fined* five hundred dollars ($500) for *each* of ten separate counts of violations of Connecticut General Statutes § 20-153 and § 20-154" for a total of $5000. (Emphasis added.) Unlike the criminal penalty prescribed in § 20-161 which permits multiple penalties in its provision that "[f]or purposes of this section *each instance* of patient contact or consultation which is in violation of any provision of this section *shall constitute a separate offense*," § 19a-17 (a) (6) expressly and limitedly authorizes the assessment of a "civil penalty of up to one thousand dollars." (Emphasis added.) The multiple "assessment" of a civil penalty or "fine," as was imposed by the board here, is illegal for want of legislative authorization. By the terms of § 19a-17, the legislature intended to punish only the course of action which the alleged individual acts under administrative review constitute. See *State* v. *Lytell,* 206 Conn. 657, 665–66, 539 A.2d 133 (1988).

This interpretation of § 19a-17 is supported by the 1986 amendment to that statute. Public Acts 1986, No. 86-365, § 2, provides in pertinent part: "(a) Each board or commission . . . may take any of the following actions, singly or in combination, BASED ON CONDUCT WHICH OCCURRED PRIOR OR SUBSEQUENT TO THE ISSUANCE OF A PERMIT OR A LICENSE upon finding the existence of good cause . . . ." While the amended version of § 19a-17 is not controlling in this case, it is signifi-

cant. This specific language demonstrates the legislative intent that § 19a-17 proscribe and punish a course of ongoing conduct, rather than separate actions or events in the course of that behavior. "It is an accepted canon of statutory construction that '[a] subsequent legislative act may throw light on the legislative intent of a former related act. *General Realty Improvement Co.* v. *New Haven,* 133 Conn. 238, 242, 50 A.2d 59 [1946].' *Hartford* v. *Suffield,* 137 Conn. 341, 346, 77 A.2d 760 (1950)." *Sandrew* v. *Pequot Drug, Inc.,* 4 Conn. App. 627, 630 n.5, 495 A.2d 1127 (1985); see also *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 541, 494 A.2d 555 (1985).

Multiple fines may be imposed for multiple acts only in a criminal prosecution as expressly allowed under § 20-161. The board was limited in its civil disciplinary sanctions to the express terms of § 19a-17, which does not permit multiple "fines" for each act established on administrative review.

To this extent I disagree with the majority.