[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from a decision of the Statewide Grievance Committee ("SGC") issuing a reprimand of the plaintiff:, an attorney, for violation of the following Rules of Professional Conduct: (1) Rule 1.1, failing to possess the requisite knowledge and skill; (2)Rule 1.5b, failing to provide a written retainer agreement to a client; and (3) Rule 1.16(d), failing to return a file to the client within a reasonable time after termination. CT Page 14137
The procedural history of this matter is as follows: On May 16, 1997, Betty Lou Emerson, (hereinafter "Emerson"), a former client of the plaintiff, filed a grievance with the SGC which was forwarded to the Hartford/New Britain Judicial District, Geographical Areas 13 and 14 Grievance Panel. The complainant Emerson supplemented her complaint and the plaintiff submitted a response to it. The local Panel, based on the material submitted to it but without a hearing, found no probable cause of a violation of the Rules of Professional Conduct by the plaintiff and forwarded that determination to the SGC on August 13, 1997. Complainant Emerson objected in writing to the Panel's determination. The SGC convened a reviewing committee, and on October 23, 1997 that committee found that probable cause existed that the plaintiff violated Rules 1.5(b), 1.1, 1.3, 1.2(a) and 1.16(d) of the Rules of Professional Conduct. On May 28, 1998, the complainant and the plaintiff were notified that a hearing would be held before another reviewing committee of the SGC on July 9, 1998. The hearing on the complaint commenced before a reviewing committee consisting of Attorney Vincent D'Angelo and Attorney Anne Hoyt. The public member of that reviewing committee, Mary Smith, did not attend the hearing or participate in the decision. At the hearing Emerson testified briefly and submitted exhibits, and the plaintiff also testified and submitted exhibits. On March 24, 1999, the reviewing committee, consisting of the aforementioned two attorneys, issued its proposed decision finding that the plaintiff violated Rules 1.5(b), 1.1 and 1.16(d) of the Rules of Professional Conduct and recommended that the SGC reprimand the plaintiff. It also recommended that the SGC order the plaintiff to return to Emerson her entire file within sixty days of the SGC's final decision. On April 16, 1999, the SGC adopted the proposed decision of the reviewing committee, issued a reprimand against the plaintiff:, and ordered the plaintiff to return Emerson's file to her before June 15, 1999.
The facts upon which the SGC rendered its decision are as follows: On September 24, 1993 Emerson authorized the plaintiff to investigate the possibility of bringing suit to enjoin her neighbors from using pesticides on their lawns that adversely affected her health. Emerson paid the plaintiff an initial cash retainer of $250 at that time. From October, 1993 through March of 1994, the plaintiff undertook to investigate Emerson's medical condition, talk to her doctors, and research possible causes of action. On April 22, 1994, he determined she had a cause of action and proposed a formal retainer agreement, agreed to by Emerson, to initiate an action on Emerson's behalf The plaintiff requested a $2,000 retainer toward the plaintiff's hourly fee of $175. Emerson made periodic payments towards the retainer between June, 1994 and May, 1996.
In September, 1995, the plaintiff drafted an application for prejudgment remedy and temporary injunction and submitted it to Emerson CT Page 14138 for her review. In April 1996, the plaintiff filed the PJR application and a verified complaint, signed by Emerson, seeking damages and a temporary and permanent injunction against the use of lawn pesticides by Emerson's neighbors. The plaintiff did not file an affidavit with the PJR application, as required by the Connecticut General Statutes §52-278c(2), because he believed that the verified complaint was sufficient to satisfy the affidavit requirement.
A hearing on the PJR application was set for May 13, 1996. Emerson could not appear because of her disability. At that hearing one of the defendants in the pesticide suit filed a motion to dismiss the PJR application on the ground that the plaintiff had failed to file an affidavit with the application. The plaintiff telephoned Emerson after the hearing and advised her about the motion to dismiss, recommended that he not pursue the PJR application and only move forward on the complaint for injunctive relief. Emerson, having lost confidence in the plaintiff, wrote to him on May 14, 1996, discharging him, authorizing him to withdraw his appearance, requesting him to present an accounting of fees paid and expenses incurred, and saying, "I will be acting Pro Se until other arrangements can be made." The plaintiff submitted a bill for his services for 21.20 hours at the rate of $175 per hour, amounting to $3,710. of that sum, the plaintiff for the first time billed Emerson for 8.5 hours of services rendered between October, 1993 and March, 1994, the period before the retainer agreement was entered into.
On October 19, 1996, the court granted the defendant's motion to dismiss the PJR application in the pesticide case on the ground that the plaintiff failed to provide an affidavit. The decision, however, did not become effective until March 27, 1997, when the parties were notified of the court's decision. In May of 1997, a year after the plaintiff had withdrawn his appearance and when Emerson was acting on her own behalf as pro se, the defendants, in that case, moved to dismiss the underlying complaint on the grounds that the writ of summons and complaint was not served after the PJR application was denied, and because the complaint lacked a certificate of financial responsibility, as required by statute. The court granted that motion to dismiss on October 28, 1997 on those grounds.
At the time Emerson discharged the plaintiff she requested her file back. The plaintiff promptly returned all the pleadings in the case but did not return copies of magazine articles, news items and other documents, of which Emerson had the originals. He did not refuse to turn them over to Emerson, such as because she did not pay his bill. Rather, he simply did not bundle the material up and mail it to her. There is no evidence he would not have given the balance of the file to Emerson if she had appeared at his office for it. CT Page 14139
The reviewing committee concluded that the plaintiff engaged in ethical misconduct in connection with the representation of Emerson in the following manner: (1) the plaintiff violated Rule 1.5b of the Rules of Professional Conduct by undertaking to research the possibility of her having a cause of action in September, 1993 and not obtaining a written retainer agreement until April of 1994; (2) the plaintiff violated Rule 1.1 of the Rules of Professional Conduct by filing a PJR application with a verified complaint but not an affidavit, which led to the dismissal of the PIP. application, and eventually, because Emerson did not serve the defendants with a summons and complaint in the pesticide action after the PJR denial, led to dismissal of the underlying injunction complaint; (3) the plaintiff violated Rule 1.16(d) of the Rules of Professional Conduct by failing to return Emerson her file within a reasonable time after termination of his representation.
Based upon these determinations, the reviewing committee recommended the plaintiff be reprimanded and that recommendation was adopted by the SGC.
At the outset of the hearing before this court, this court raised what it considered a jurisdictional issue and gave the parties the opportunity to submit post-argument briefs on it. The issue was whether or not the reviewing committee of the SGC that heard the complaint in this case and recommended to the SGC disciplinary action was properly constituted. The court did so because General Statutes § 51-90g(a) and Connecticut Practice Book § 2-35 provide that a reviewing committee authorized to hold a hearing and submit a proposed decision to the SGC shall consist of at least three members, "including at least one-third who are not attorneys," and the record clearly reveals the reviewing committee in this case consisted of two attorneys and no non-attorneys.
A number of Superior Court decisions have upheld decisions of reviewing committees of the SGC proceeding without a lay member. Braunstein v.Statewide Grievance Committee, CV 95 0548149, Superior Court, Judicial District of Hartford/New Britain (McWeeny, J. October 24, 1997) (20 Conn.L.Rptr. No. 14, 467); Hanson v. Statewide Grievance Committee, CV 96-0560411, Superior Court, Judicial District of Hartford/New Britain, (McWeeny, J., January 30, 1997); Cramer v. Statewide GrievanceCommittee, CV 96-0562467, Superior Court, Judicial District of Hartford/New Britain, (McWeeny, J., January 31, 1997); StatewideGrievance Committee v. Tyler, CV 97-0568610, Superior Court, Judicial District, Hartford/New Britain, (Lavine, J., September 11, 1997);Statewide Grievance Committee v. Egbarin, CV 98-0585474, Superior Court, Judicial District of Hartford/New Britain, (Berger, J., June 22, 1999). All of these cases invoke Rule 7F of the Rules of Procedure of the SGC to the effect that a majority of a committee shall constitute a quorum, and CT Page 14140 rely upon two Supreme Court decisions: Lewis v. Statewide GrievanceCommittee, 235 Conn. 693 (1996) and Levinson v. Board of ChiropracticExaminers, 211 Conn. 508 (1989).
In Lewis the reviewing committee recommending a reprimand of an attorney consisted of two attorneys and one lay person. The two attorneys attended all the hearings; the lay person attended none of the hearings and resigned from the committee before reading the record and casting a vote. The two attorneys split as to recommending a reprimand. The matter was referred to another lay person who reviewed the record and eventually voted to reprimand the attorney.
The plaintiff in Lewis contended that he was deprived of due process because: (1) he did not have a hearing before a full reviewing committee of three members in violation of § 51-90g(a) and Practice Book §2-35; and (2) the member of the reviewing committee who cast the deciding vote against him had not attended the grievance hearings. As to the first claim, the Supreme Court held that the fact the reviewing committee consisted of fewer than three members did not violate the statute and the Practice Book section. It said, "Contrary to the plaintiff's claim, however, neither [§ 51-90g(a) and Practice Book § 2-351 requires that all designated members of a reviewing committee attend grievance hearings. In fact, Statewide Grievance Committee Rule of Procedure 7F establishes that, once empowered to act, a quorum of the reviewing committee can act for the whole, although a majority vote is needed for a proposed decision."
The court further held that the lay person who voted did not personally have to attend the grievance hearings and could vote after reading the record.
Thus, the case did not deal with the requirement of § 51-90g(a) and Practice Book § 2-35 that a three member reviewing committee have at least one non-attorney. More significantly, Lewis is not dispositive of the issue of whether or not a lay person must participate in the decision of the reviewing committee because in that case, the lay person, in fact, did participate.
In Levinson, a chiropractor was suspended by a board of chiropractic examiners consisting of two practicing chiropractors and no public member. The plaintiff in that case claimed a violation of § 19a-8, which stated at that time that not less than one-third of the members of any of the boards listed in § 19a-14, including the chiropractic examining board, shall be public members. In rejecting that claim, the court applied the common law rule that, "A board may act as long as there exists a quorum equal to a majority of all the actual members of the CT Page 14141 board." 211 Conn. at 539. It noted, "There is no provision in Chapter 372 of the General Statutes, which creates the board of chiropractic examiners, that abrogates the common law rule." Id.
The court cited in support of the common law rule as to a quorum, Leev. Board of Education, 181 Conn. 69, 83-84 (1980), and Strain v. Mims,123 Conn. 275, 281 (1937). Lee involves a local board of education andStrain a local zoning commission.
The laws creating neither board or commission require categories of members, so those cases are distinguishable from the facts in Levinson
where § 19a-8 requires professional and lay members on the chiropractic examining board.
The Levinson court noted that the public member slot on the chiropractic examining board had not been filled, and cited U.S. Vision,Inc. v. Board of Examiners for Opticians, 15 Conn. App. 205, 213 (1988) for the proposition that a vacancy on a board does not deprive the board of the statutory authority to act. Levinson differs from the instant case because here the lay member of the reviewing committee had been appointed, was serving, but declined to participate.
The most significant aspect of Levinson is that it deals with the number of board members qualified to act and not with the composition of the board members qualified to act. A law requiring professional and public members on a professional board does not abrogate, as the Levinson
court asserts, the common law rule as to what constitutes a quorum on a homogeneous board. The common law rule as to a quorum of a board, relied upon by the Levinson court, and Rule 7F of the Rules of Procedure of the SGC as to a quorum of a reviewing committee, relied upon by the Lewis
court, are clearly superseded by a statutory mandate that there be a prerequisite percentage of nonprofessional members on these boards and committees.
It may be noted that § 20-25 providing for professional and public members on the State Board of Chiropractic Examiners was amended in 1998 to provide, "A majority of the members of the board shall constitute a quorum." Clearly that amendment permits a majority of the board to act regardless of the composition of the acting board. Thus, the legislation knows how to resolve the matter of a quorum on a composite board. It has chosen not to do in § 51-90g(a).
Rather than relying on Lewis and Levinson, this court finds DuBaldo v.Department of Consumer Protection, 209 Conn. 719 (1989) more directly in point on the issue of the composition of board members. In that case an electrical work examining board suspended the license of an electrical CT Page 14142 contractor. At the time of the hearing, § 20-331 required that the examining board shall consist of seven members, at least "two of whom shall be unlimited journeymen engaged in and licensed for such occupation." The court found that two journeymen on the board were union officials and not engaged in electrical work, as required by § 20-331. The court, therefore, held "It is clear that the board was not properly constituted. Since neither man was "engaged in' the occupation of electrical work, the board's decision to suspend the plaintiff's license was without statutory authority." Id., 723.
DuBaldo implicitly effectuates the mandate that professional boards be constituted as required by statute. The legislature in 1977 passed a sweeping act that reorganized state executive departments, provided a mechanism for termination of agencies, board, and commissions that could not justify their continuance, and relevant here, provided for public members on professional boards and commissions. P.A. 77-614; see, for example, General Statutes § 19a-8.
The purpose of the latter provision was to achieve, as Senator Joseph Lieberman remarked on the Senate floor, "accountability, openness and public interest in the placement of members of the public on state regulatory bodies. This, in my opinion, is a small revolution that is accomplished by this bill." 20 S. Proc., Pt. 7, 1977 Sess., p. 2683. Section 51-90g(a), was amended in 1986 to provide for three member reviewing committees, "at least one-third who are not attorneys," to hear complaints against attorneys and render a proposed decision to the SGC. The legislative history of the law is slight because it was adopted on the consent calendar in the Senate and with no debate on that provision in the House. (29 5. Proc., Pt. 9, 1986 Sess., pp. 3126-29, 3178-79; 29 H.R. Proc., pt. 12, 1986 Sess., pp. 4196-203, 4460-70. Clearly, the statutory composition of the reviewing committees of SGC was designed to serve the same purposes of accountability and openness as the 1977 government reorganization act for other regulatory boards. When reviewing committees consist solely of lawyers, the public perception can be that lawyers are protecting themselves. Participation by a nonattorney gives the lie to such a perception and thus enhances public confidence in SGC disciplinary decisions.
The defendant argues that the requirement in § 51-90g(a) that the reviewing committee consist of at least one third who are not attorneys is directory and not mandatory. In support of this, it cites Doe v.Statewide Grievance Committee, 240 Conn. 671 (1997). In that case the Supreme Court construed the provision on § 51-90g(c), that a statewide grievance subcommittee render its proposed decision ninety days from the date of a local grievance panel's determination of probable cause, to be directory rather than mandatory. The decision is consistent CT Page 14143 with the principle that time restraints are sometimes designed to "secure order, system and dispatch in the proceeding;" Jones v. MansfieldTraining School, 220 Conn. 721, 727 (1992); and are not matters of substance. However, here, the statutory provision that a reviewing committee be composed of at least one third who are not attorneys goes to the committee's very authority to act, may be jurisdictional in nature, and must be construed as mandatory.
The defendant also argues that the reviewing committee only made a recommendation to the SGC and the SGC voted the reprimand of the plaintiff. Not even the Supreme Court in Lewis sustained the action of the reviewing committee of the SGC on that basis, nor do any of the Superior Court decisions cited above. Such an interpretation would render the provisions of § 51-90g(a) relating to the composition of the reviewing committee superfluous, and thus counter the well established canon of statutory interpretation that the legislature has a purpose for each provision of a statute and care must be taken to effectuate all of them.General Motors Corp. v. Dohmann, 247 Conn. 274, 287 (1998).
Thus, this court concludes the reviewing committee hearing the plaintiff's case was improperly constituted when it acted without a non-attorney. When the DuBaldo court reached a similar conclusion, it did not dismiss the case for lack of jurisdiction, or sustain the appeal, but remanded the case to the electrical worker examining board "to be proceeded with according to this opinion." 209 Conn. at 723. This court interprets that to mean that the Supreme Court directed that the electrical work board should act when it was properly constituted. Likewise, here, this court remands the case to the SGC for the reviewing committee to act on the complaint against the plaintiff by two lawyers and one non-attorney, as required by § 51-90g(a) and Practice Book § 2-35.
 Robert Satter Judge Trial Referee