## GARY FLEISCHMAN *v.* CONNECTICUT BOARD OF EXAMINERS IN PODIATRY ET AL.
## (8200)

SPALLONE, DALY and NORCOTT, Js.

Argued January 3—decision released July 3, 1990

*John R. Williams,* with whom, on the brief, was *David M. Tilles,* for the appellant (plaintiff).

*Thomas J. Ring,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, *Richard J. Lynch* and *Sharon A. Scully,* assistant attorneys general, for the appellees (defendants).

*Andrew K. Dolan* filed a brief for the Academy of Ambulatory Foot Surgery as amicus curiae.

DALY, J. This is an appeal from a decision of the Superior Court dismissing the plaintiff's appeal from a decision of the state board of examiners in podiatry (board) suspending the plaintiff from the practice of podiatry for thirty days and fining him $3500. We affirm the trial court's judgment.

Under General Statutes § 20-59 (4), the board may take disciplinary action against any practitioner who engages in illegal, incompetent or negligent conduct.

In this case, the department of health services (department) presented the board with a statement of charges alleging that the plaintiff had violated General Statutes § 20-59 (4) in one or more of the following ways while performing foot surgery on a patient, Helen Lally, in January and February, 1986. The plaintiff (1) did not keep accurate or adequate medical records, (2) did not adequately record the postsurgery condition of a patient, (3) failed to preserve adequately articular cartilage during a joint reconstructive procedure, (4) left large spikes of bone over a phalangeal joint, (5) caused traumatic arthritis to the phalangeal joint, (6) caused nerve entrapment, (7) performed an unauthorized sesamoidectomy, (8) performed an unauthorized partial sesamoidectomy, (9) did not document adequate preoperative care, (10) did not document adequate postoperative care, and (11) did not ensure sterile conditions prior to surgery.

The board commenced hearings on the charges on January 13, 1988, and issued a memorandum of decision on September 9, 1988. The board dismissed sections (3) through (6) of the above statement of charges on the basis of insufficient evidence. The board found that the plaintiff was negligent in failing to take an axial view X ray of the patient's foot. In his brief to this court, the plaintiff contends that the failure to take the X ray was not included in the statement of charges.

The plaintiff unsuccessfully appealed to the Superior Court. In his brief before this court, the plaintiff states that he wants to raise the same six claims that he made before the Superior Court and that he "will discuss the claims and the trial court's view in series." The plaintiff's brief covers only the first four claims, however. " ' "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this

court." ' " *State* v. *Ramsundar,* 204 Conn. 4, 16, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987).

What we will consider in this appeal are the plaintiff's claims that the board (1) lacked jurisdiction because it was improperly constituted, (2) deprived the plaintiff of due process by applying standards of care that had not been promulgated in agency regulations or established on the record through expert testimony, (3) erroneously admitted the expert testimony of a member of the board, and (4) erroneously found him negligent on a specification not contained in the statement of charges.

The board is an agency within the meaning of General Statutes § 4-166 (1) and is subject to the provisions of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. See *Donis* v. *Board of Examiners in Podiatry,* 207 Conn. 674, 682, 542 A.2d 726 (1988). The scope of review of administrative appeals is well settled. We do not retry the facts or substitute our judgment for that of the board. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). Also, judicial review of administrative conclusions of law is limited to a determination of whether, in light of the evidence, those conclusions are unreasonable, arbitrary, illegal or an abuse of discretion.[1] *Id.*

---

[1] The Academy of Ambulatory Foot Surgery has filed an amicus brief for the plaintiff. Only two pages of the amicus brief address the issues raised in this appeal. The remainder consists of allegations that practitioners within the mainstream of podiatry are organized in an attempt to suppress the practice of minimal incision surgery. The petitioner in this case has been a minimal incision surgeon. We simply note that the petitioner and the amicus curiae have failed to show any hint of abuse of prosecutorial discretion on the part of the department of health services in this case.

## I

The plaintiff's first claim is that the board lacked subject matter jurisdiction to adjudicate the statement of charges brought by the department because the board was not duly constituted as required by law. General Statutes § 20-51 provides that the board shall consist of five members: three resident practicing podiatrists of good standing and two public members. General Statutes § 4-9a (b) provides in part: "Public members shall constitute not less than one third of the members of each board and commission within the executive department . . . ." Also, General Statutes §§ 19a-8 and 19a-14 (b) (14) require that public members comprise not less than one third of the board. Public members are electors of the state who are not affiliated with the profession licensed by the board. General Statutes § 4-9a (b).

The board that heard the charges against the plaintiff consisted of two practicing podiatrists and one public member. According to a stipulation that the parties filed in the Superior Court on March 17, 1989, the board consisted of five podiatrists and no public members from 1977 to 1979. In 1980, however, the membership was changed to consist of three podiatrists and two lay persons. The board retained that composition through 1983. From 1984 through 1986 the two public members' slots were vacant. In 1987 the board consisted of three podiatrists and one public member. In early 1988 the board consisted of two podiatrists and one public member. The Superior Court found that Martin M. Pressman, a podiatrist, was appointed to the board in February, 1988, but was disqualified from the plaintiff's case.

The Superior Court, in its memorandum of decision, correctly explained why the plaintiff's contention that

the board was illegally constituted must be rejected. We reiterate those reasons here. As our Supreme Court stated in an analogous context: " 'The almost universally accepted common-law rule is . . . [that] a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body.' *FTC* v. *Flotill Products, Inc.,* 389 U.S, 179, 183, 88 S. Ct. 401, 19 L. Ed. 2d 398 (1967). 'In the absence of legislative restriction, the general rule is that a committee or commission performing such functions as those exercised by the zoning commission in this case can take valid action at a meeting of which all members have proper notice and at which a majority are present.' *Strain* v. *Mims,* 123 Conn. 275, 281, 193 A. 754 (1937), and cases therein cited. There is no provision in chapter 372 of the General Statutes, which creates the board of chiropractic examiners, that abrogates the common law rule. Further, '[w]ords purporting to give a joint authority to several persons shall be construed as giving authority to a majority of them'; General Statutes § 1-1 (h); and '[t]he rule is that all bodies charged with the performance of public duties continue to function though a vacancy exists.' *Brein* v. *Connecticut Eclectic Examining Board,* 103 Conn. 65, 87, 130 A. 289 (1925). A board may act as long as there exists a quorum equal to a majority of all the actual members of the board. *Lee* v. *Board of Education,* 181 Conn. 69, 83–84, 434 A.2d 333 (1980); *U.S. Vision, Inc.* v. *Board of Examiners for Opticians,* 15 Conn. App. 205, 213, 545 A.2d 565 (1988) ('[t]wo members of the board constitute a majority and have all of the authority that is granted to a three member board'). The failure of the governor to appoint lay members to the state optometry board did not deprive the board of the power to act where a quorum equal to a majority of members of the board existed during the transaction of the business

involved. *Serian* v. *State,* 297 S.E.2d 889, 893 (W.Va. 1982)." *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 539–40, 560 A.2d 403 (1989).

The plaintiff relies on *Dubaldo* v. *Department of Consumer Protection,* 209 Conn. 719, 552 A.2d 813 (1989), in support of his claim that the board was illegally constituted. In *Dubaldo,* the court held that the state electrical work examining board was without authority to suspend the license of an electrical contractor because the two members of the board who were required by General Statutes § 20-331 to be engaged in the electrical contracting business were, in reality, union employees. Contrary to the assertion in the plaintiff's brief, this case does not involve the improper constitution of an executive board as did *Dubaldo* because there is no dispute in the present case that two members of the board really are practicing podiatrists, as required by General Statutes § 20-51. This is a case involving a vacancy on an executive board, and it is controlled by *Levinson* v. *Board of Chiropractic Examiners,* supra, and *U.S. Vision, Inc.* v. *Board of Examiners for Opticians,* supra.

In his brief, the plaintiff states that the Superior Court wrongfully held that, "the board could . . . function with a majority of its three podiatrists." This is an inaccurate characterization. The trial court found that at the time of the hearing, the board consisted of two podiatrists and one lay person, and that the third podiatrist, Pressman, who was appointed to the board in February, 1988, after hearings in the plaintiff's case had already started in January, was disqualified from sitting on the board for the remainder of the hearings. We are confident that the plaintiff's mischaracterization was inadvertent for it does not benefit his cause. Even if the board in this case consisted of three podiatrists and one lay person, so that the ratio of one in three required by General Statutes § 19a-8 was

destroyed, our Supreme Court has held that an executive board lacking a one in three ratio due to a vacant public member position still has jurisdiction to conduct disciplinary hearings. *Levinson* v. *Board of Chiropractic Examiners,* supra, 539.

There is no merit to the plaintiff's first claim.

## II

The plaintiff's second claim is contrary to the rule of law as enunciated in *Jaffe* v. *State Department of Health,* 135 Conn. 339, 348–50, 64 A.2d 330 (1949). The plaintiff claims that he was deprived of due process because the board did not promulgate, pursuant to the UAPA, regulations governing the standard of care to be employed in the practice of podiatry, and because standards of care in podiatry were not established through expert testimony at his hearing.

*Jaffe* held that medical examining boards have expertise in the standards of care in their professions because they are comprised of practicing members of the profession. Id. "It is to be presumed that the members of the defendant board, as composed under the statute, are qualified to pass upon questions of professional conduct and competence." *Leib* v. *Board of Examiners for Nursing,* 177 Conn. 78, 89, 411 A.2d 42 (1979).

The passage of Public Acts 1977, No. 77-614, which changed the composition of medical examining boards to include public members, did not vitiate the rule of *Jaffe* and *Leib. Levinson* v. *Board of Chiropractic Examiners,* supra, 522–33. In *Levinson,* the court held that expert testimony on standards of care is not required in disciplinary hearings before medical examining boards. Id., 533.

If medical examining boards can rely on their own expertise on standards of care in disciplinary hearings, then they need not promulgate administrative regula-

tions governing the standard of care. The UAPA provides that any agency may use its experience, technical competence and specialized knowledge in the evaluation of evidence in contested cases. See General Statutes § 4-178 (6).

The plaintiff admits that there was expert testimony at the hearing on the standards of care in podiatry. Pressman offered such testimony. The plaintiff argues that Pressman's testimony was so general as to be "virtually irrelevant." The probative value of the evidence was for the board to determine in the first instance, and that determination will not be disturbed on appeal unless it was arbitrary or an abuse of discretion. See *Griffin Hospital* v. *Commission on Hospitals & Health Care,* supra. Moreover, even supposing that Pressman's testimony was completely irrelevant, the board was not required to hear expert testimony on standards of care in the first place. *Levinson* v. *Board of Chiropractic Examiners,* supra.

### III

The plaintiff's third claim is that he was deprived of due process in that Pressman's testimony should not have been permitted because he was a member of the board when he testified, which created a risk of bias or undue influence on the board. The Superior Court made the following relevant findings of fact. The department selected Pressman to testify as an expert witness in the case. At the second hearing, the board announced that Pressman had been appointed to the board but would not participate in the board's consideration of the plaintiff's case. Each board member indicated on the record that he had no involvement with the selection of Pressman and that each would not be unduly influenced by Pressman's appointment in weighing his testimony. Pressman did not participate in the decision of the board. On the basis of these facts, the

Superior Court concluded that the plaintiff had made no showing of bias or undue influence. The record supports this conclusion.

We agree with the Superior Court that the plaintiff has failed to show that he was denied due process because of Pressman's testimony. Even if Pressman had sat as a member of the board in this case, the plaintiff would not have been deprived of due process. " 'The [UAPA] does not and probably should not forbid the combination with judging of instituting proceedings, negotiating settlements, or testifying.' " *Withrow* v. *Larkin,* 421 U.S. 35, 56 n.24, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975), quoting 2 K. Davis, Administrative Law Treatise § 13.11, p. 249 (1958). In *Withrow* v. *Larkin,* the court held that it is not a violation of due process for an agency to investigate and bring charges against a person, and then to adjudicate those charges. Id., 58; see also Annot.: Suspension or Revocation of Medical or Legal Professional License as Violating Due Process—Federal Cases, 98 L. Ed. 851, 864 (1954). Likewise, there would seem to be no inherent unfairness in allowing a member of a medical examining board to testify as to standards of care and also to take part in adjudicating the claim. Although the plaintiff asks us to resolve this question today, based on his claim that Pressman sat as a member of the board, the question is in fact entirely irrelevant to this appeal because Pressman did not participate in the board's adjudication. There is no merit to this due process claim.

## IV

Finally, the plaintiff claims that he had inadequate notice of one of the charges against him. In section (9) of the statement of charges, the plaintiff was charged with "failure to document adequate pre-operative care." The board found that the plaintiff's negligent failure to take a preoperative axial view X ray of the

patient's foot violated General Statutes § 20-59 (4), as alleged in section (9) of the statement of charges. The board ordered the plaintiff to pay a $500 fine for the violation contained in section (9).

The plaintiff had a due process right to notice of the charges against him. *Morgan* v. *United States,* 304 U.S. 1, 18, 58 S. Ct. 773, 82 L. Ed. 1129, reh. denied, 304 U.S. 23, 58 S. Ct. 999, 82 L. Ed. 1135 (1938). "The procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause." *Adamchek* v. *Board of Education,* 174 Conn. 366, 369, 387 A.2d 556 (1978). General Statutes § 4-177 (b) provides that "notice shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; (4) a short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished."

If the notice of charges does not fairly apprise the person of the nature of the offense with which he is charged, the court may set aside the order of an agency for deficiency of notice. *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 374–75, 355 A.2d 265 (1974). "[T]he test of whether one is given adequate notice is whether it apprises him of the claims to be defended against, and on the basis of the notice given, whether plaintiff could anticipate the possible effects of the proceeding." *Goranson* v. *Department of Registration,* 92 Ill. App. 3d 496, 500, 415 N.E.2d 1249 (1980).

The Superior Court found that section (9) of the statement of charges adequately apprised the plaintiff of "the nature of the negligence the board found with respect to his failure to take an X ray of the patient's foot before operating." The plaintiff argues that he was deprived of due process because he was charged with the offense of failure to document preoperative care, but was found to have committed the offense of failure to take a necessary X ray. We reject this argument because the plaintiff was in fact charged in section (9) with "failure to document adequate pre-operative care." The board found that an axial view X ray of the patient's foot was an essential part of adequate preoperative care in this case. Of course, the plaintiff could not document or otherwise keep records of an X ray he never took. The plaintiff was not charged, however, in section (9) with failure to *document adequately* preoperative care.[2] He was charged with failure to document *adequate preoperative care*. Because the plaintiff did not provide adequate preoperative care, he could not document adequate preoperative care. Thus, he committed the violation alleged in section (9) of the statement of charges. There is no doubt that the plaintiff had adequate notice of the charge in section (9).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] Section (1) of the statement of charges alleged that he did not keep accurate or adequate medical records.