[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Fleet National Bank, owner of the property and as trustee for the Estate of Cameron Reaud, appeals the decision of the defendant, Winchester Zoning Board of Appeals (ZBA) denying its application for the removal of a condition attached to a variance in the chain of title to real property located at 500 East Wakefield Boulevard, Winsted, Connecticut. The condition prevents the construction of a year-round dwelling on the property. The plaintiff, as owner of said property, has established aggrievement.
The plaintiff claims that the refusal to remove the condition is unreasonable, arbitrary and illegal for one or more of the following reasons: (1) a majority of the defendant's members voted in favor of the application, and a super-majority is not required by General Statutes § 8-7; (2) the two members who voted against the application employed the wrong legal standard; and (3) the decision, as reported, deprives the plaintiff of due process of the Fourteenth Amendment to the United States Constitution. The property is located at 500 East Wakefield Boulevard, Winsted. Connecticut. (ROR, Application #2592) The subject property is owned by the Estate of Cameron Reaud, Fleet CT Page 914 Bank NA Trustee, for the benefit of the Episcopal Church. (ROR, Application #2592) The parcel consists of 12,830 square feet (.295 acres), and is located in the Highland Lake District Zone in the Town of Winchester. (ROR, Application #2592). It is bordered to the north and south by year-round residential homes, both of which are currently connected to the municipal sewer system, to the east by Highland Lake and to the west by East Wakefield Boulevard. (ROR, Building envelope plan). The subject property has 82 feet of frontage on the road, 62 feet of frontage on Highland Lake and over 175 feet of frontage with the adjoining properties. (ROR, Building envelope plan).
On January 23, 1993, the defendant Winchester Zoning Board of Appeals granted a variance, known as Variance #2476 with respect to the 35 foot minimum side yard setback requirement contained in § 4a.2 of the Winchester Zoning Regulations. (ROR Original variance #2476). Because the property only has 82 feet of street frontage, the required setback would have limited any construction to a house less than 12 feet in width. The variance allows a 12 foot reduction in the required minimum setback to the south side of the property, and a 9.5 foot reduction in the required minimum setback on the north side of the property. (ROR, Original variance #2476). This allows the construction of a house approximately 33 feet in width.
The defendant, however, imposed a condition on the variance that any structure could not exceed 640 square feet, and that the dwelling must be limited to a seasonal cottage. (ROR, Original variance #2476). The seasonal-use condition was designed to reduce the adverse environmental impact to the lake by preventing year-round use of a septic sanitation system on the property. (ROR, Tr. 3/22/97 pp. 23; Tr. 4/22/97, p. 1) A certification of the variance was filed on November 24, 1993 in Volume 247 of the Winchester Zoning Regulations at page 603. (ROR, Certification of Notice of November 23, 1997).
On May 1, 1994, some four months after the issuance of the variance, properties located on East Wakefield Boulevard were allowed to connect with the municipal sewer system. Thereafter, both properties which abut the subject property connected with the municipal sewer system and discontinued use of their system. (ROR Tr. 3/25/97).
The plaintiff attempted to sell the property, but was unable to do so because of the seasonal-use restriction. (ROR, Tr. CT Page 915 3/25/97, pp. 3 8). As a result on February 21, 1997, the plaintiff filed an application seeking the removal of the condition from the variance. (ROR, Application #2592). The basis for that application was the fact that all dwellings along East Wakefield Boulevard, both seasonal and year round, are now required to utilize the municipal sewer system. (ROR, Memorandum in support of application).
On March 25, 1997, the defendant held a public hearing concerning the application for the removal of the condition from the variance. At that time, the defendant was presented with evidence that there was no longer any basis for distinguishing between year-round and seasonal dwellings. A March 7, 1997 letter from Stephen Vaill, Chairman of the Winchester Water Pollution Control Authority, states that, "as a result of the installation of sewers along East Wakefield Boulevard, there is no longer any distinction between seasonal cottages and year-round dwellings with respect to contamination of the lake." (ROR, Exhibit 4; Tr. 3/25/97, pp. 2-3).
Similarly, a March 25, 1997 letter from David N. Battista, a professional engineer, states that, "the potential for adverse environmental impact is equal for both year-round and seasonal dwellings. The maintenance habits, cleanliness, and environmental sensitivity of a dwelling's occupants plays a much greater role in actual environmental impact than does the frequency of occupation. (Emphasis in original). (ROR, Exhibit 5 to Memorandum in support of application, Tr. 3/25/97, p. 3)
On April 22, 1997, the defendant held a second public hearing concerning the plaintiff's application. At that time, Paul Griggs, Chairman of the defendant, made several comments which reflect his belief that the plaintiff was obliged to demonstrate some hardship in order to secure removal of the condition. In the words of Mr. Griggs, "[m]ore power to them but certainly I don't see a hardship. " (ROR, Memorandum in support of application). He further stated that, "I don't think it is a hardship, they can do something with the land, they want to do more." (ROR, Exhibit 5).
At the conclusion of the April 22nd meeting, the members of the defendant voted 3-2 in favor of the plaintiff's application. (R.O.R. Tr. 4/22/97, p. 30; Id., Notification of decision — April 23, 1997. (ROR, Tr. 4/22/97 p. 10) Despite the majority vote in favor of the plaintiff, the application was denied by the defendant. When asked to identify the reasons for his vote against CT Page 916 the application, Mr. Griggs stated that "there is no hardship. They can use the land." (ROR, Tr. 4/22/97, p. 10) The notification of decision states that the application was denied due to the lack of a "land use hardship. " (ROR, Notification of decision — April 23, 1997).
It is well-settled that "[i]n reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Smith v. Zoning Board of Appeals, 277 Conn. 71,80, 629 A.2d 1089 (1993). "Local zoning boards are vested with a liberal discretion . . . . A trial court must, however, review the decision of the zoning board of appeals to determine if the board acted arbitrarily, illegally, or unreasonably." Wnuk v. ZoningBoard of Appeals, 225 Conn. 691, 695-96, 626 A.2d 698 (1993).
It is also clear that if the issue is one of law, the court, of course, has the primary responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. United Parcel Service v.Administrator, 209 Conn. 381, 385, 551 A.2d 724 (1988). The plaintiff bears the burden of proof to sustain an appeal.Fernandes v. Zoning Board of Appeals, 24 Conn. App. 49, 53,585 A.2d 703 (1991).
The record clearly reflects that the plaintiff's application for removal of the seasonal occupancy condition from the variance was denied despite the fact that the defendant's members voted 3-2
in favor of the proposal. In the absence of a controlling statute, the general rule in this state is that a majority of votes cast is sufficient to carry an application before an administrative agency. See Fleischman v. Connecticut Board of Examiners in Podiatry,22 Conn. App. 181, 186, 576 A.2d 1302 (1990). No portion of the General Statutes requires that an application for removal of a condition from a variance be approved by anything more than a majority of the zoning board of appeals. In fact, the only statute which requires the concurring vote of four members of a zoning board of appeals (General Statutes § 8-7), by its express terms, applies only to the granting of a variance, not the removal of a condition attached to the variance.
General Statutes § 8-7 sets forth the specific circumstances under which an applicant to a zoning board of appeals is required to obtain more than a simple majority. It provides in pertinent CT Page 917 part, as follows:
 The concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the enforcement of the zoning regulations or to decide in favor of the applicant any matter upon which it is required to pass under any bylaw, ordinance, rule or regulation or to vary the application of the zoning bylaw, ordinance, rule or regulation.
General Statutes § 8-7. This unambiguous language clearly applies to an application for a variance; however, it makes no mention of an application concerning a condition attached to a variance. If the Legislature had intended to impose a super-majority requirement on such an application it would have certainly expressly done so in § 8-7.
To construe § 8-7 differently would violate well-established tenets of statutory construction. It is well-settled that statutes and ordinances which pertain to zoning are in derogation of the common law property rights, and cannot be construed to include or exclude by implication what is not clearly within their express terms. See Planning Zoning Commission v. Gilbert, 208 Conn. 696,705, 546 A.2d 823 (1988). Here, the plain language of the statute imposes no requirement that an application to remove a condition must be approved by anything more than a simple majority. As a result, the decision of the defendant is an abuse of discretion since the plaintiff obtained a majority vote in favor of the application.
The record also reveals that the votes which were cast against the application resulted from a finding that the plaintiff had failed to demonstrate a land use hardship. This stated reason, however, is irrelevant and demonstrates that the defendant applied the wrong legal standard. The removal of a condition requires nothing more than a material change in circumstances, not a showing of hardship. Caseria v. Zoning Board of Appeals, Superior Court, Judicial District of Fairfield, Docket No. 312301 (June 12, 1995) (Levin, J., 14 CONN. L. RPTR. No. 13, 407). It appears that the defendant has applied the standard applicable to a variance application rather than the more liberal standard governing the removal of a condition attached to a variance. CT Page 918
The burden of proof for an application to remove a condition is separate and distinct from the standard for a variance application. As noted previously, an applicant for a variance must demonstrate an unusual hardship resulting from the application of a local zoning ordinance to his property. See Kelly v. ZoningBoard of Appeals, 21 Conn. App. 594, 597, 575 A.2d 249 (1990). On the other hand, an application to remove a condition from a variance requires nothing more than a material change in circumstances which has made the condition unreasonable. Caseriav. Zoning Board of Appeals, supra; see also, Ford v. Zoning HearingBoard, 616 A.2d 1089 (Pa. Comwlth. 1992).
In Caseria Judge Levin employed the following rationale in rejecting the contention that the standard governing the issuance of a variance also governs an application to remove a condition:
 There is no question that the plaintiff was not and is not seeking a variance. The substance of the plaintiff's application was that the condition of the 1991 variance be removed . . . .Since the plaintiff did not seek authority to use her property in a manner proscribed by the zoning regulations, she was not obliged to prove that adherence to the strict letter of the zoning ordinances caused unusual hardship unnecessary to the carrying out of the general purposes of the zoning plan. . . . This court held that an applicant who seeks the modification of a condition attached to a variance must show that material change in circumstances has made the condition unreasonable.
Caseria, supra.
The instant mater involves not an application for a-variance, but an application to remove the seasonal occupancy condition attached to the variance. There is no zoning regulation prohibiting the erection of a year round residence on the subject property. There is an ordinance containing certain side yard setback requirements. These requirements, however, have already been varied, and are not at issue in this case. Since the plaintiff does not seek to use its property in a manner inconsistent with the Winchester Zoning Regulations, it is not obliged to prove that any CT Page 919 hardship would result from the continued application of the condition. Instead, the plaintiff is merely required to demonstrate a material change in the circumstances which has made the condition unreasonable. Thus the defendant erred by requiring the plaintiff to demonstrate hardship.
The defendant's failure to employ the correct legal standard warrants the reversal of this matter. See Commission on HumanRights v. General Dynamics Corp., Electric Boat Division, Superior Court, Judicial District of New London, Docket No. 096303 (May 17, 1991) (Leuba, J., 4 CONN. L. RPTR. 113, 1991 WL 88054).
For the reasons stated, the appeal is sustained.
PICKETT, J.