[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Leonard Mosco (Mosco), appeals from a decision of the Inland Wetlands Watercourses Commission of the Town of Trumbull (The Commission) denying Mosco's application for an Inland Wetlands Permit to construct a single family residential dwelling on the property located at 659 Plattsville Road, Trumbull, CT. Pursuant to General Statutes § 22a-43 (a), also named as a defendant is Sidney J. Holbrook (Holbrook), Commissioner of the Department of Environmental Protection of the State of Connecticut. Mosco appeals pursuant to General Statutes § 22a-43.
The record reflects that on August 29, 1995, Mosco filed an application for a permit to construct a residential dwelling at 659 Plattsville Road, Trumbull, CT. The application indicates that he is a contract purchaser. In his application, Mosco is seeking to build a home on a 2.8 acre parcel of land, 2.3 acres of which is protected wetlands. A conservation easement was established on this property when it was originally subdivided. An application involving wetland disturbance on this property was previously rejected by the Commission. The present application requests permission to fill a 0.07 acre area with approximately 230 cubic yards of fill. Mosco's stated reason for the proposed encroachment of the wetland area is development of driveway access.
The Commission performed a field inspection of 659 Plattsfield Road on September 20, 1995. The Assistant Town Engineer, Brian E. Smith, objected to the proposed 10 foot driveway on the basis that CT Page 2454 it was too narrow and recommended that it be increased to a width of 12 feet with a 2 foot shoulder on each side. The widening of the driveway increased the wetland disturbance to .12 acres.
A public hearing was held by the Commission on October 5, 1995 and was continued to November 2, 1995. At the November 2, 1995 public hearing, a letter indicating adjacent property owner Dolores Gregory's unwillingness to grant an easement of access to Mosco was read into the record. The Gregory property provided a possible alternative to the wetland crossing. In addition, a letter signed by adjacent property owners stating their opposition to the proposed project was submitted by Charles Gregory and read into the record by Chairman Altieri. Mr. Gregory expressed concern that the construction would disturb the natural drainage patterns of the surrounding areas. If the application was approved, Mr. Gregory requested that curtain drains be installed between the driveway and the existing stone wall. Bjorkland stated that installation of curtain drains would tend to dry out the wetland area. Bjorkland indicated, however, that Mosco would have no objection to the installation of a drainage pipe at the Gregory side of the property, running under the driveway and discharging into the wetlands. Roman Kozlowski, another adjacent property owner, spoke in opposition to the project because he felt there would be additional run-off to his property. Bjorkland stated that there would be no impact to Mr. Kozlowski's property because all construction would take place below his property.
On November 21, 1995 the members of the commission revisited the site area for the proposed driveway. The Commission observed that since the previous field inspection was held on September 20, 1995 "a fair amount of standing water has developed on this wetland area." The Commission then voted to deny the application at their December 5, 1995 meeting. The Commission stated the following reasons for the denial: (1) The proposal was rejected on the basis that the development of this property, according to the plans submitted, would adversely impact the on-site wetland area; (2) The potential for negative impact to surrounding property owners; (3) a previously approved subdivision (# 91-31) constituted reasonable use of the land and, therefore, the property should not be further divided. From that decision the plaintiff Mosco has appealed.
"It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute."Munhall v. Inland Wetlands Commission, 221 Conn. 46, 50, CT Page 2455602 A.2d 566 (1992). "Pleading and proof that the plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal." Id. The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact. Id.
"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Munhall v. Inland Wetlands Commission, supra,221 Conn. 51.
Mosco appeals from a decision of the Commission denying his application for an Inland Wetlands Permit to construct a single family residential dwelling on the property located at 659 Plattsville Road, Trumbull, Ct. Mosco alleges that "at all relevant times hereto [he] was and is the optionee of [the] property. . . ." "`The plaintiff's option rights [with respect to the subject property], viewed without regard to their interruption and eventual termination, gave him an interest in the [property] sufficient to demonstrate a specific, personal and legal interest in the commission's decision, and to demonstrate that his interest was specially and injuriously affected by that decision.'" Pollio v.Conservation Commission, 32 Conn. App. 109, 114-15, 628 A.2d 20
(1993), quoting Goldfeld v. Planning Zoning Commission,3 Conn. App. 172, 176, 486 A.2d 646 (1985). At the hearing regarding the administrative appeal held by this court on January 23, 1998, Mosco testified that he holds an option for the subject premises and he stated that the option would be viable for the next one hundred and twenty days and for a period thereafter. Based on Pollio andGoldfeld, the court finds that Mosco, as optionee of the property, is aggrieved and as such has standing to maintain this appeal.
"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reasons must be substantial; [t]he CT Page 2456 credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . ." (Internal quotation marks omitted.) Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587-588, 628 A.2d 1286 (1993).
"In challenging an administrative agency action, the plaintiff has the burden of proof." Samperi v. Inland Wetlands Agency, supra,226 Conn. 587. "The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion." Id. "Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citations omitted.) Id.
 I
The first and second arguments asserted by Mosco in his brief overlap and are therefore considered together. Mosco first argues generally that the Commission acted illegally, arbitrarily and in abuse of its discretion because the reasons given for the denial of his application are not supported by substantial evidence of record. Relying on General Statutes § 22a-42a(d), Mosco contends that an inland wetlands agency is required to state for the record the reasons for its decision to grant or deny a permit application for a regulated activity. In reviewing the Commission's decision, Mosco maintains that "the court is to determine whether or not the express reasons given for denial are based upon the agency's regulations and whether those reasons are reasonably supported by evidence in the record." In particular, Mosco maintains that there was no credible evidence in the record to support the Commission's reasons with respect to an adverse impact on the on-site wetlands area or the potential negative impact to adjacent property owners. Mosco concludes that the Commission totally disregarded testimony of its own expert as well as other record evidence. The Commission counters that "the law gives a local Commission great latitude in interpreting its regulations and in evaluating the testimony at Public Hearing." The Commission notes that "the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . ." Samperiv. Inland Wetlands Agency, supra, 226 Conn. 588. The Commission states that "[i]n challenging an administrative agency action, the Plaintiff has the burden of proof . . . the Plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." The Commission maintains that Mosco has not fulfilled this burden.[1]
CT Page 2457
More specifically, Mosco then argues that the Commission's first and second reasons for denial ignored the undisputed expert testimony of record that the application would have no adverse impact on wetlands area on site and upon surrounding properties. Mosco insists that the Commission voted to deny the application even though the testimony of its expert, David Bjorkland, was "uncontroverted" and "in fact supported by the Commission's own Assistant Town Engineer." Mosco maintains that the Commission was bound by the testimony of his expert and, therefore, that it could not have voted to deny the application. In support of this proposition, Mosco cites Feinson v. Conservation Commission,180 Conn. 421, 429 A.2d 910 (1980), Milardo v. Inland WetlandsCommission, 27 Conn. App. 214, 605 A.2d 869 (1992), and Tanner v.Conservation Commission, 15 Conn. App. 336, 544 A.2d 258 (1988). Mosco argues that these cases stand for the proposition that "the Commission cannot disregard the only expert evidence on an issue before it when its agency members lack their own expertise or knowledge with respect thereto."
The Commission contends that "the Town Engineer disagreed with Bjorkland's proposal to build a narrow driveway through the wetland area." The Commission, therefore, argues that "the Commission could easily, rationally and prudently have determined that if the driveway needed to be wider . . . that no feasible and prudent alternative had been proposed by the applicant, and so it denied the application."
Holbrook notes that "Mr. Bjorkland is not of record as a soil scientist expert in the science of wetlands." "Mr. Bjorkland stated at the public hearing that he was a professional engineer registered in the State of Connecticut. . . ." Holbrook argues that the substance of Bjorkland's expertise went to the choice of construction technique through the wetland area necessitated by the need for a driveway to connect the upland portion of the property to the street. Holbrook contends that "it is not the case from a review of the record that the efficacy of the filter fabric technology that Mr. Bjorkland recommended for the driveway was the sole or predominate reason for the commission's having rejected the application." Holbrook then states "that the town engineer had no argument with this particular technology is, ultimately, unenlightening."
Mosco's arguments regarding the Commission's reasons for denial and specifically Mosco's assertion that the Commission CT Page 2458 ignored the expert testimony imply that the Commission disregarded the record. "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Huck v. Inland Wetlands WatercoursesAgency, 203 Conn. 525, 539-40, 525 A.2d 940 (1987). "The evidence, however, to support such reason must be substantial. . . ."Samperi v. Inland Wetlands, supra, 226 Conn. 588.
At the public hearing on the plaintiff's application, Attorney Frederick Ehrsam and David Bjorkland presented the application. Attorney Ehrsam stated that the application requested permission to cross the wetland area in order to construct a driveway to the upland soil on the lot. Mr. Bjorkland then stated he was a "professional engineer registered in the State of Connecticut."
Mr. Bjorkland requested a waiver of the conservation easement to fill .07 of an acre with two hundred and thirty cubic yards of soil in order to construct a ten foot driveway. The Assistant Town Engineer, Brian E. Smith, objected and recommended a twelve foot driveway with a two foot shoulder on either side. Mr. Bjorkland then gave testimony regarding filter fabrics in response to the concerns raised by Dolores and Charles Gregory, abutting landowners. Mr. Smith made no argument regarding the filter fabrics. Mosco, relying on Feinson v. Conservation Commission, supra, 180 Conn. 421, Milardo v. Inland Wetlands Commission, supra,27 Conn. App. 214, and Tanner v. Conservation Commission, supra,15 Conn. App. 336, argues that a "lay commission acts without substantial evidence and therefore arbitrarily" when it disregards uncontroverted expert testimony of a technical nature. Holbrook, however, insists that Mr. Bjorkland is not of record as a soil scientist expert in the science of wetlands and as a result his testimony regarding filter fabrics does not qualify as expert testimony.
The facts of Feinson v. Conservation Commission, supra,180 Conn. 421, Milardo v. Inland Wetlands Commission, supra,27 Conn. App. 214, and Tanner v. Conservation Commission, supra,15 Conn. App. 336, are distinguishable from the facts of this case. This case is controlled by the reasoning of Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 525, and Kaeser v.Conservation Commission, 20 Conn. App. 309, 314, 567 A.2d 383
(1989).
The Feinson court held that a "lay commission acts without substantial evidence, and arbitrarily, when it relies on its own CT Page 2459 knowledge and experience concerning technically complex issues such as pollution control, in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view." Feinson v. Conservation Commission, supra,180 Conn. 429. The Feinson court affirmed the decision of the trial court to sustain Morris Feinson's appeal regarding the denial of his application to conduct a regulated activity on land designated as an inland wetland. Id., 422. The only expert witness was the design engineer hired by the plaintiff who presented his technical report and responded to questions. Id., 423. Also, "no public official appeared, whether in person or by written communication, to contest the application" and "no member of the public spoke on the application." Id. "Nowhere in the public hearing, or at any other time and place, was the plaintiff afforded a fair opportunity to hear the commission's fears and to attempt to allay them." Id., 428. "The questioning of the plaintiff's witness . . . at the public hearing did not give warning that his evidence was to be entirely discredited; on the contrary, that hearing as transcribed, suggests that the proffered evidence was on the whole satisfactory to the commission." Id. The Supreme Court then held: "If an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceeding." Id., 428-29. The court concluded that the Conservation Commission of the town of Newtown deprived Morrison Feinson of this opportunity. Id., 429.
The Tanner court stated that "while we recognize that an administrative agency is not required to believe any of the witnesses, including expert witnesses; it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge." Tanner v.Conservation Commission, supra, 15 Conn. App. 341. The Tanner court affirmed the decision of the trial court to sustain Seaborne Tanner's appeal following the Conservation Commission's denial of his application for a permit to construct a single family residence on land within an inland wetlands area. Id., 337-38. The only expert witnesses who offered testimony at the hearing were two professional engineers, a soil scientist and a biologist, all hired by the plaintiff. Id., 337-38. After reviewing the record, the court held that all the experts were in agreement that the proposed project could be built on the site. Id., 338. Therefore, the Tanner court held that "there was an absolute disregard of the unanimous CT Page 2460 contrary opinion." Id., 341.
The Milardo court affirmed the decision of the trial court sustaining William Milardo's appeal following the Inland Wetlands Commission's denial of his application to construct a driveway crossing the wetlands. Milardo v. Inland Wetlands Commission, supra, 27 Conn. App. 214. "[T]he plaintiff submitted a report conducted by a certified soil scientist and environmental consultant that concluded that `the proposed house and septic system will have minimal impact on the present functioning of the wetland. . . .'" Id., 222. "There was no expert evidence in the record that contradicted the expert evidence submitted by the plaintiff." Id., 222. Therefore, the Milardo court stated that "`while we recognize that an administrative agency is not required to believe any of the witnesses, including expert witnesses; it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge.'" Id., 222, quoting Tanner v. Conservation Commission, supra, 15 Conn. App. 341.
The Commission in this case, unlike the Commission in Feinson, did not disregard contrary expert testimony without affording a timely opportunity for rebuttal of its point of view. Unlike in theMilardo and Tanner cases, the Commission members were not without expert evidence or knowledge as reflected by the objection raised by their expert, the Town Engineer, to the width of the driveway, their consideration and rejection of a previous application by Mosco regarding this property, the testimony of the neighboring landowners, their close questioning of Mosco's expert at length and that several members viewed the property on two different occasions. In a real sense, the testimony of Mosco's expert, David Bjorkland, was not simply uncontroverted and then disregarded by the Commission.
The Kaeser court did not agree with the narrow reading ofFeinson that "in technically complex matters, expert testimony is the only acceptable substantial evidence." Kaeser v. ConservationCommission, supra, 20 Conn. App. 314. The Kaeser court held that "this position would have reduced the agency hearings to a nose count of experts" and would have made irrelevant all other testimony including that from numerous neighbors. Id.
Kaeser held that nonexperts may offer reliable and substantial evidence. Id., 315-16. In Kaeser, the court argued that the Feinson
court was concerned with fundamental fairness. Id., 314, citing CT Page 2461Feinson v. Conservation Commission, supra, 180 Conn. 429. Therefore, "an agency decision must be based on reliable evidence made public and the applicant must have an opportunity to respond to agency concerns." Kaeser v. Conservation Commission, supra,20 Conn. App. 314, citing Feinson v. Conservation Commission, supra,180 Conn. 428-29.
The Kaeser court affirmed the decision of the trial court dismissing Kaeser's appeal from the Conservation Commission's denial of his application for a permit to construct a house within a regulated wetlands area. Kaeser v. Conservation Commission, supra,20 Conn. App. 317. "Unlike the commission in Feinson, this commission placed all relevant facts on the record and shared its concerns and objections with the plaintiffs." Id., 314. "The commission held four public hearings on the plaintiffs' application." Id. "The named plaintiff attended and spoke at all four hearings; the plaintiffs' engineer attended and spoke at two." Id. "Commission members questioned the named plaintiff and the plaintiffs' engineer closely and at length on all aspects of the plan. . . ." Id. "In light of the public concern over the construction area, the commission solicited and received testimony from the owners of several neighboring homes, all of whom spoke about the frequent flooding and voiced concerns about encroachments on the river." Id., 315. The Kaeser court concluded that "unlike the agency in Feinson, this Commission did not place its data base beyond the plaintiff's scrutiny." Id.
Similarly, the Commission in this case placed all relevant facts and concerns on the record and shared its concerns and objections with Mosco and his representatives. (See ROR, Exhibit 7f.) The Commission held a public hearing regarding Mosco's application on November 2, 1995 at which Attorney Frederick Ehrsam and David Bjorkland, a professional engineer, spoke on behalf of the application. Commission members questioned Mosco's representatives closely and at length on all aspects of the plan. (See ROR, Exhibit 7f.)
Further, the Town Engineer objected to the proposed ten foot driveway on the basis that it was too narrow and recommended that it be increased to a width of twelve feet with a two foot shoulder on each side. (ROR, Exhibits 4b and 7f, pp. 3-4.) The driveway recommended by the Town Engineer is very similar to the driveway previously proposed by Mosco and rejected by the Commission in 1994. (See ROR, Exhibits 7a and 7f.) Specifically, in 1994, Mosco proposed a driveway that would cause .13 acres of wetland CT Page 2462 disturbance. (ROR, Exhibit 7f, p. 2.) At the public hearing, Mr. Bjorkland stated that one of the reasons for the Commission's denial of Mosco's 1994 application was that it was "too aggressive a use of the wetland areas." (ROR, Exhibit 7f, p. 2.) Mr. Bjorkland then stated that "although the [present] application hasnot changed we have minimized it." (Emphasis added; ROR, Exhibit 7f, p. 2.) The court, however, disagrees that the record provides substantial evidence that the proposal has been minimized. The Town Engineer did not think a ten foot wide driveway would be sufficient and insisted that if a driveway is constructed on the property it must be at least twelve feet wide with a two foot shoulder on either side. (ROR, Exhibit 7f, p. 4.) This would result in .12013 acres of wetland disturbance. Id. The amount of wetland disturbance is nearly identical to that which was proposed by Mosco in 1994 and rejected by the Commission.
Although the Commission voted on and denied the construction of a twelve foot wide driveway, and while Mosco's expert responded to questions and concerns surrounding the construction of a twelve foot wide driveway, the record is silent as to whether Mosco accepted this change or amended his application. See ROR, Exhibits 9b, p. 6 and 7f. In Kaeser, unlike in Feinson, Tanner, or Milardo, "a report from Donald Ballou, a professional engineer retained by the commission, suggests changes to the proposed construction, but the record is silent as to whether the plaintiff accepted these changes or amended his application." Kaeser v. ConservationCommission, supra, 20 Conn. App. 312.
Also similar to Kaeser, the Commission in this case received testimony from the owners of several neighboring homes at the public hearing regarding Mosco's application, all of whom voiced concerns about the proposed driveway and encroachment on the wetland area. For example, the concerns raised by Dolores and Charles Gregory at the November meeting included their not unfounded fear that the construction of a long driveway would "result in the blockage of the existing natural drainage pattern and cause a diversion of this pattern that will adversely effect the lower portions of our property and compromise conservation efforts downstream of the existing drainage pattern within the confines of the conservation easement." In addition, a letter from adjoining landowners explained why "further development of this property would be a detriment to the wetlands, our properties, and have a negative effect on our property values." Further, Commissioner Spodnick stated at the December meeting that "a lot of those people came in and brought letters and said they had a CT Page 2463 problem with [the home] being that close to their property. . . ." The Kaeser court relied on Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 525 to support its argument that nonexperts may offer reliable and substantial evidence.Kaeser v. Conservation Commission, 20 Conn. App. 315. The plaintiff in Huck applied for a permit to construct a home within a regulated area abutting a lake in Greenwich. Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 526. The plaintiff offered testimony from four experts in four different fields in support of her application, while the agency offered no expert testimony in rebuttal. Id., 538. The trial court sustained the plaintiff's appeal from the denial of the permit, finding that the record contained no reasons supported by substantial evidence. Id., 536-38. The agency appealed and the Supreme Court affirmed the agency's decision, faulting the trial court for substituting its own judgment and discretion. Id., 538.
The Huck court reviewed the record and found the agency had provided a number of reasons for denying the permit. Huck v. InlandWetlands Watercourses Agency, supra, 203 Conn. 539-40 n. 11. The court held that the record contained substantial evidence in support of the agency's reasons. Id., 541-42. "Although only the plaintiff offered expert testimony, `an administrative agency is not required to believe any witness, even an expert. . . .'"Kaeser v. Conservation Commission, supra, 20 Conn. App. 316, quoting Huck v. Wetlands Watercourses Agency, 203 Conn. 542. "The court noted that . . . the record showed `active and probing participation by agency members in questioning these experts. . . .'"Kaeser v. Conservation Commission, supra, 20 Conn. App. 316, quoting Huck v. Wetlands Watercourses Agency, 203 Conn. 544. The questions in Huck concerned the septic system, the nature of the lot, the soils and the proposed fill. Kaeser v. ConservationCommission, supra, 20 Conn. App. 316, citing Huck v. Wetlands Watercourses Agency, 203 Conn. 547.
In this case, the record showed active and probing participation by agency members in questioning David Bjorkland and Attorney Ehrsam. See ROR, Exhibit, 7f. The questions covered the nature of the lot, the proposed fill, the width and the construction of a driveway. Further, Commissioners Altieri, Keough, James and Benjamin viewed the site on two different occasions. "Knowledge obtained through personal observations of the locus may properly be considered by the agency in arriving at reasons given for its denial." Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 547. CT Page 2464
The Huck court discussed the legislative intent in enacting the Inland Wetlands and Watercourses Act. Kaeser v. ConservationCommission, supra, 20 Conn. App. 317, citing Huck v. InlandWetlands Watercourses Agency, 203 Conn. 551. The act gives broad discretion to agencies to preserve, protect and maintain the environment and ecology of the state's natural resources. Kaeserv. Conservation Commission, supra, 20 Conn. App. 317, citing Huckv. Inland Wetlands Watercourses Agency, 203 Conn. 551. "The discharge of the statutory responsibilities by local wetlands commissions may require commission members to reject `an otherwise acceptable application' because of its impact on the environment."Kaeser v. Conservation Commission, supra, 20 Conn. App. 317, quoting Huck v. Inland Wetlands Watercourses Agency, supra,203 Conn. 552.
The court concludes that the Commission did not act illegally, arbitrarily and in abuse of its discretion in denying Mosco's application because the reasons for denial are supported by substantial evidence in the record and, specifically, nonexperts may offer reliable and substantial evidence. The substantial evidence rule does not call for a roll call of qualified experts. Rather, the rule requires that "[a]n agency decision must be based on reliable evidence made public and the applicant must have an opportunity to respond to agency concerns." Kaeser v. ConservationCommission, supra, 20 Conn. App. 314; see Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 547.
The court further concludes that the Commission's decision was based on reliable evidence made public. Notably, the applicant had an opportunity to respond to agency concerns. "The agency's decision must be sustained if an examination of the record discloses [substantial] evidence that supports any one of the reasons given." Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 539-40. The record reveals the objection of the Town Engineer to the width of the driveway, the Commission's consideration and rejection of a nearly identical previous application by Mosco regarding this property, the testimony of neighboring landowners, the Commission's questioning of Mosco's expert closely and at length on all aspects of the plan and that several Commission members viewed the property on two different occasions. Mosco's appeal cannot be sustained on the ground that the Commission's first and second reasons for denial, that the application would have an adverse impact on wetlands area on site and upon surrounding properties, are not supported by substantial CT Page 2465 evidence of record.
 II
Mosco's next claim is that the Commission considered matters which were outside the scope of its regulations and which did not impact upon the wetlands.
The Commission's third reason for denying Mosco's application stated "it was noted that the previously approved subdivision [application #] 91-31, constituted reasonable use of the land and therefore the property should not be further divided." Mosco argues that this reason for denial "amounts to nothing more than some general speculative opinion of members of the Commission which is irrelevant to their statutory responsibility of reviewing the application before it solely with regard to the impact of the proposal upon inland wetlands."
Mosco states that "General Statutes § 22a-42 (a)[2] establishes that the purpose of the act creating inland wetlands agencies is to require municipal regulation of activities effecting the wetlands and watercourses within those towns." Therefore, Mosco insists that "the inland wetlands agency can only consider matters which impact inland wetlands and regulated activities." Mosco concludes that the "purported reason for denial No. 3 has no basis whatsoever in the Commission's Regulations" and "is not supported by evidence of record."[3]
Mosco next argues that the Commission's final reason for denial of the application, specifically that the property should not be further divided because the previously approved subdivision # 91-31 was a reasonable use of the land, has "no basis in the Commission's Regulations" and "is not supported by evidence of record."[4]
General Statutes § 22a-41 (a) provides: "In carrying out the purposes and policies of sections 22a-36 to 22a-45a, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to . . . (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity. . . ." See also Trumbull Inland Wetlands Watercourses Regulations §§ 10.2b, 10.2d 10.2e, 10.2f.[5] While this commission may not have CT Page 2466 authority to restrict further subdivisions, the court does not construe the commission's findings as doing so. Rather, the challenged findings reflect the commission, in fact, considered the criteria contained in General Statutes § 22a-41 and in its own regulations, as it was required to do. See Woodburn v. ConservationCommission, 37 Conn. App. 166, 173, 655 A.2d 764 (1995). "It must be borne in mind . . . that we are dealing with a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer." Couch v. Zoning Commission, 141 Conn. 349,358, 106 A.2d 173 (1954). "[A] local land use body is composed of laymen whose procedural expertise may not always comply with the multitudinous statutory mandates under which they operate." Gagnonv. Inland Wetlands Watercourses Commission, 213 Conn. 604, 622,569 A.2d 1094 (1990). "Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." Couch v. Zoning Commission, supra. The Commission did not consider matters which were outside the scope of its regulations and which did not impact upon inland wetlands.
The commission's findings in this regard are supported by the record. The commission determined that Mosco's application would have an adverse impact on the wetland area and surrounding properties. (ROR, Exhibit 9a.) Next, the Commission "noted that the previously approved subdivision [#] 91-31 constituted reasonable use of the land and, therefore, the property should not be further subdivided." (ROR, Exhibit 9a.) Mosco's proposed encroachment would be within the boundaries of a conservation easement which was established when the property was originally subdivided. (ROR, Exhibit 7a.)
The record reflects that the Swans received approval for a house on lot 2A in 1991 and then Mosco bought that home and the remaining property (lot 2B). (ROR, Exhibit 7f, pp. 5-6) The construction of the Swans' home was approved on a two lot subdivision of lots 2A and 2B and the location of the home was chosen from among three alternatives. (ROR, Exhibit 9b, p. 4.) At the time the location and construction of the Swans' home was approved, a conservation easement was created over the remaining wetlands on the two lot subdivision. (ROR, Exhibit 9b, p. 4.) The intent of the easement was to protect the on-site wetlands from any future encroachment. (ROR, Exhibit 4a.)
At the public hearing on the plaintiff's application, Attorney Ehrsam submitted a copy of the conservation easement into the CT Page 2467 record. The conservation easement reflects that this is a difficult piece of property to develop. Attorney Ehrsam noted that "in subparagraphs 1, 2 and 4 there is a specific authorization that the Commission can waive that regulation . . . ." It was well within the Commission's discretion to deny a request to waive the regulation of this property. The Commission considered the criteria in General Statutes § 22a-41 and the Trumbull Inland Wetlands and Watercourses Regulations, §§ 10.2b, d-f, in rendering reason for denial number three.
 III
At the hearing on January 23, 1998, Mosco withdrew his claim that the commission's decision should be reversed because the chairman should have but failed to recuse himself.
Mosco, however, also alleges that the Commission violated §22a-42a(b) because the votes to deny the application did not constitute a majority of the Commission. The following additional facts are necessary in order to present this claim. Commissioner James made a motion to approve the application; Commissioner O'Neill seconded the motion. Commissioner James voted in favor of the application. Commissioner O'Neill and Commissioner Spodnick voted to deny the application. Commissioner Altieri abstained from the vote. Commissioner Schumaker did not participate in either the discussion or voting for this application because he was not present for this application.
General Statutes § 22a-42a(b) provides in relevant part that "regulations and inland wetland and watercourse boundaries may be from time to time amended, changed or repealed, by majority vote of the inland wetlands agency, after a public hearing in relation thereto is held by the inland wetlands agency, at which parties in interest and citizens shall have an opportunity to be heard and for which notice shall be published in the manner specified in this subsection." Section 22a-42a(b), therefore, deals with proceedings to amend the local agency's regulations or boundaries and is inapplicable to a vote on a permit application. "There is no comparable provision stating the vote required for an application for a permit to conduct regulated activities in inland wetlands and watercourses." R. Fuller, Connecticut Land Use Law and Practice § 21.3, p. 376.
In the absence of any legislative requirement to the contrary the rule is that an administrative "board may act as long as there CT Page 2468 exists a quorum equal to a majority of all the actual members of the board." Levinson v. Board of Chiropractic Examiners,211 Conn. 508, 539, 560 A.2d 403 (1989); see Fleischmanv. Board of Examiners in Podiatry, 22 Conn. App. 181, 186,576 A.2d 1302 (1990); R. Fuller, supra, p. 374. Mosco's claim that the commission failed to validly act in view of the requirements of General Statutes § 22a-42a(b), therefore, is unpersuasive.
If any one of the reasons offered by the Commission is supported by substantial evidence in the record, the appeal should be dismissed. See Samperi v. Inland Wetlands Agency, supra,226 Conn. 587-588. Since there is substantial evidence in the record for the Commission's finding that the plaintiff's application would have an adverse impact on on-site wetlands and negatively impact surrounding property owners, the appeal is dismissed.
Lubbie Harper Jr.Judge of the Superior Court